STATE of Wisconsin, Plaintiff-Appellant,

v.

Michelle R. POPENHAGEN,
Defendant-Respondent-Petitioner.

Supreme Court

*No. 2006AP1114–CR. Oral argument September 12, 2007.
—Decided June 4, 2008.*

2008 WI 55

(Also reported in 749 N.W.2d 611.)

604

606

Prosser, J., concurs.

ZIEGLER, J., concurs in part, dissents in part.
ROGGENSACK, J., dissents.

For the defendant-respondent-petitioner there were briefs by *James B. Connell* and *Crooks, Low & Connell, S.C.*, Wausau, and oral argument by *James B. Connell.*

For the plaintiff-appellant the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. The defendant, Michelle R. Popenhagen, seeks review of a published court of appeals decision reversing an order of the Circuit Court for Oneida County, Mark Mangerson, Judge.[1] The circuit court granted the defendant's motion to suppress bank documents that police obtained pursuant to a subpoena issued without a showing of probable cause in violation of Wis. Stat. § 968.135 (2005–06),[2] as well as incriminating statements that the defendant made after police confronted her with the unlawfully obtained bank documents.

¶ 2. In reversing the circuit court's order, the court of appeals concluded that the defendant cannot rely on the federal or state constitution for suppression and that Wis. Stat. § 968.135 does not expressly provide that a violation of the statute permits suppression as a remedy.

¶ 3. The issue on review is whether the circuit court erred in granting the defendant's motion to

---

[1] *State v. Popenhagen,* 2007 WI App 16, 298 Wis. 2d 388, 728 N.W.2d 45.

[2] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

suppress both the bank documents and the defendant's incriminating statements. The defendant raises four arguments in support of the circuit court's order. The defendant contends (1) that police obtained her bank documents and incriminating statements in violation of her Fourth Amendment[3] right to privacy; (2) that police obtained her bank documents and incriminating statements in violation of her right to privacy under Article I, Section 11 of the Wisconsin Constitution;[4] (3) that the bank documents were obtained in violation of Wis. Stat. § 968.135 and that suppression of both the bank documents and the defendant's incriminating statements is an appropriate remedy; and (4) that the circuit court possessed inherent authority to order suppression of the contested evidence obtained by the State's "misuse of process."

¶ 4. We conclude that suppression of both the bank documents and the defendant's incriminating statements in the present case is an appropriate remedy when the bank documents were obtained in violation of Wis. Stat. § 968.135 and when the incriminating state-

---

[3] The Fourth Amendment of the United States Constitution provides in full:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[4] Article I, Section 11 provides in full:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

ments were obtained by law enforcement officers confronting the defendant with the unlawfully obtained bank documents. Accordingly, we conclude that the circuit court did not err as a matter of statutory interpretation in granting the defendant's motion to suppress the bank documents and the defendant's incriminating statements. We reverse the decision of the court of appeals and affirm the circuit court's order to suppress evidence of the bank documents and incriminating statements at issue.

¶ 5. The court of appeals addressed the constitutional issues. Because we affirm the circuit court's order on statutory grounds, we leave the interpretation of the federal and state constitutional provisions and federal statutes relating to the obligations of banks that the court of appeals addressed for another case in which these issues are determinative.

I

¶ 6. The relevant facts are not in dispute for purposes of this appeal. The defendant was an employee at Save More Foods, a grocery store in Minocqua. In August 2004, the owner of Save More Foods contacted the Minocqua Police Department and alleged that the defendant had improperly obtained money from the store. The owner specifically alleged that the defendant had cashed checks at the store drawn from accounts containing insufficient funds and further that the defendant had stolen money from the store's automated teller machine. According to the complaint and attached police report, the defendant allegedly stole approximately $29,000.

¶ 7. As part of the State's investigation, the district attorney's office sought three subpoenas before filing a complaint. Circuit Court Judges Kinney and

Mangerson signed the subpoenas, ordering the banks to appear before the circuit court on a date and time certain and to bring Popenhagen's specified bank records or to mail the bank records to the Minocqua Police Department. Although an officer of the Minocqua Police Department apparently had filled out an affidavit, neither the police nor the Oneida County District Attorney's Office included any affidavit showing probable cause in the application to the circuit court for the subpoenas. The circuit court issued the subpoenas without recording a finding of probable cause.

¶ 8. A copy of each subpoena is attached hereto. Each subpoena states that it is issued pursuant to Wis. Stat. § 805.07. Section 805.07(1) states that "subpoenas shall be issued and served in accordance with ch. 885."[5] Wisconsin Stat. § 885.01 provides that any judge may sign and issue a subpoena to require the "attendance of witnesses and their production of lawful instruments of evidence in any action, matter or proceeding or to be examined into before any court, magistrate, officer . . . or other person authorized to take testimony in the state." Section 972.11(1) provides that the rules of practice in civil actions shall be applicable in all criminal proceedings unless the context of the section manifestly requires a different construction. Section 972.11 further provides that Chapter 885 "shall apply in all criminal proceedings."

¶ 9. Although the subpoenas on their face are in a form substantially similar to the forms set forth in both

---

[5] The subpoenas in the present case were issued under Wis. Stat. § 885.01, which authorizes subpoenas to be signed and issued by a circuit court judge. Section 805.07 authorizes a subpoena to be issued and signed by an attorney of record. The subpoenas in the present case were not signed by an attorney of record.

§§ 805.07(4) and 885.02, the subpoenas do not satisfy either Wis. Stat. § 885.01 or § 805.07. The subpoenas did not require the banks, in the words of either statute, to attend an "action, matter or proceeding pending or to be examined into before" the circuit court.[6] For an explanation of why these subpoenas do not satisfy Wis. Stat. §§ 885.01 or 805.07, namely because no proceeding is pending, see *State v. Schaefer*, 2008 WI 25, ¶ 44, 308 Wis. 2d 279, 746 N.W.2d 457, and Part A of the concurring opinion, ¶¶ 102–125 (Abrahamson, C.J., concurring).

¶ 10. The District Attorney apparently conceded in the circuit court that it used the wrong form of subpoena.[7] Both the District Attorney and the defendant agreed in the circuit court that the State should have followed, but did not follow, Wis. Stat. § 968.135. The District Attorney and the defendant disagreed in the circuit court whether suppression is the appropriate remedy for the error. The circuit court suppressed the bank records and incriminating statements under § 968.135.

¶ 11. In the court of appeals the only statute the parties briefed relating to the subpoenas was Wis. Stat. § 968.135. The court of appeals ruled on § 968.135, declaring that suppression was not available in the present case as a remedy for the violation of § 968.135.

¶ 12. The defendant's petition for review in this court raised the following issue: "Is suppression of

---

[6] Wis. Stat. § 885.01(1). Wisconsin Stat. § 805.07(1) similarly provides that a subpoena issued by an attorney in a civil action is to compel attendance of a witness for deposition, hearing or trial in an action or special proceeding.

[7] The State's brief before this court asserts that the prosecuting attorney conceded at circuit court that the office used the wrong form. State's brief at 5–6.

evidence a remedy for violation of Sec. 968.135 which requires probable cause for the issuance of a subpoena for documents?"[8] The only statute the defendant and the State addressed in this court relating to the subpoenas was Wis. Stat. § 968.135.[9]

¶ 13.　Having taken this case to address the issue whether the remedy of suppression is available when bank records were obtained by the district attorney with a subpoena that did not comply with the probable cause affidavit requirement of Wis. Stat. § 968.135, we address that issue.[10]

---

[8] The other three issues relate to the defendant's state constitutional right to an expectation of privacy in the bank records; the defendant's Fourth Amendment right to an expectation of privacy in the bank records; and the court's inherent power to order suppression of evidence.

[9] Wisconsin Stat. § (Rule) 809.62(6) provides that if a petition for review is granted, the petitioner cannot raise or argue issues not set forth in the petition unless ordered otherwise by this court. The court has not ordered that any other issue be argued.

[10] Justice Prosser's concurrence, ¶¶ 119, 126, concludes that suppression of both the bank documents and the incriminating statements was proper because Wis. Stat. § 968.22, governing deficiencies in search warrants, affords the circuit court discretion to suppress evidence obtained in violation of a subpoena statute when such violation is nontechnical or affects the defendant's substantial rights. Justice Ziegler's concurrence/dissent, ¶¶ 133, 136, concludes that suppression of the bank documents (but not the incriminating statements) was proper because even when the remedy of suppression is not authorized by any statute, the circuit court has inherent authority to suppress evidence obtained pursuant to a defective subpoena. Because we conclude that suppression of both the bank documents and the incriminating statements was proper under Wis. Stat. § 968.135, we need not address the question whether suppression of evidence obtained by a defective subpoena falls

¶ 14. Wisconsin Stat. § 968.135 requires "a show-ing of probable cause" before a court may issue a subpoena under that section. The State does not dis-pute that the subpoenas requiring production of the defendant's bank documents were issued in violation of Wis. Stat. § 968.135. The statute provides in full as follows:

**Subpoena for documents.** Upon the request of the attorney general or a district attorney and upon a showing of probable cause under s. 968.12, a court shall issue a subpoena requiring the production of docu-ments, as specified in s. 968.13(2). The documents shall be returnable to the court which issued the subpoena. Motions to the court, including, but not limited to, motions to quash or limit the subpoena, shall be addressed to the court which issued the subpoena. Any person who unlawfully refuses to produce the docu-ments may be compelled to do so as provided in ch. 785. This section does not limit or affect any other subpoena authority provided by law.

¶ 15. The banks complied with their respective subpoenas, delivering bank statements, deposit slips, and cancelled checks to the Minocqua Police Depart-ment. Having obtained her bank documents, police offic-ers interviewed the defendant, confronting her with her bank documents. The officers explained to the defendant that her bank deposits corresponded in time and amount to money reported missing from Save More Foods. At that point, the defendant made several incriminating statements. No transcript of the defendant's remarks is

within Wis. Stat. § 968.22 governing defective search warrants; or within the circuit court's inherent authority; or within Wis. Stat. § 805.18(1) requiring a court to disregard any error or defect in proceedings that does not affect the substantial rights of the adverse party.

in the record; the remarks are recounted in summary fashion in a police report that is in the record.

¶ 16. The defendant was charged with theft of more than $10,000 contrary to Wis. Stat. § 943.20(1)(b) and (3)(c). In a pretrial motion, the defendant moved to suppress both her bank documents and the statements she made after being confronted with those documents.

¶ 17. The circuit court granted the defendant's motion. The circuit court reasoned that the defendant had a right to privacy in her bank documents under the Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution. The circuit court further reasoned that suppression is an appropriate remedy not only for the State's constitutional violations but also for the State's violation of Wis. Stat. § 968.135.

¶ 18. The State appealed the circuit court's order, and a divided court of appeals reversed the order. The majority of the court of appeals held that the defendant had no right to privacy in her bank documents under either the United States or the Wisconsin Constitution and that suppression is not a proper remedy when evidence is obtained in violation of Wis. Stat. § 968.135.

¶ 19. The dissenting opinion concluded that Wis. Stat. § 968.135 establishes a person's reasonable expectation of privacy in bank documents in the context of criminal proceedings; that the State never explained its failure to comply with the statute and therefore committed a flagrant violation of the statute; and that the only appropriate remedy is the suppression of the bank documents and the tainted incriminating statements.

II

¶ 20. The State contends that the circuit court erred in suppressing as evidence the bank documents

615

and the incriminating statements for the following reasons: (A) The defendant lacked standing to challenge the subpoenas issued to her banks; (B) Suppression of the bank documents is not an appropriate remedy for violation of Wis. Stat. § 968.135; and (C) Suppression of the defendant's incriminating statements as evidence is not an appropriate remedy for violation of § 968.135 in obtaining the subpoena for the bank statements. We reject each of these arguments, concluding that the defendant had standing to challenge the subpoenas issued to her banks and that suppression of the bank documents and incriminating statements as evidence is an appropriate remedy for violation of Wis. Stat. § 968.135.

A

¶ 21. We first consider whether the defendant had the requisite standing to challenge the subpoenas issued to her banks under Wis. Stat. § 968.135.

¶ 22. The State asserts that only the banks, as targets of the subpoenas, could move to quash or limit the subpoenas for lack of probable cause, even though the statute does not expressly limit the motions to those made by the target of the subpoenas. The State further argues that the legislative history of Wis. Stat. § 968.135 reflects a legislative intent to expand the prosecutor's investigative authority to obtain information by subpoena from third parties not suspected of criminal activity and that giving standing to the person whose documents are being sought contravenes the legislative purpose.

¶ 23. A determination of standing presents a question of law that we decide independently of the

616

circuit court and court of appeals but benefiting from their analyses.[11]

¶ 24. A person has standing to seek judicial intervention when that person has "a personal stake in the outcome"[12] and is "directly affected by the issues in controversy."[13] Under Wisconsin law, standing "should not be construed narrowly or restrictively," but rather should be construed broadly in favor of those seeking access to the courts.[14]

¶ 25. The defendant meets the test for standing. In requiring a showing of probable cause and a court order, Wis. Stat. § 968.135 protects the interests of persons whose documents are sought in addition to protecting the interests of the person on whom a subpoena is served. The statute prevents unwarranted fishing expeditions.

¶ 26. The State sought the defendant's bank documents in contemplation of charging the defendant with a crime and using the bank documents against her. Clearly the defendant had a "personal stake" in the question whether the State's subpoenas were valid; she would be "directly affected" by the resolution of this question.

---

[11] *Zellner v. Cedarburg Sch. Dist.,* 2007 WI 53, ¶ 13, 300 Wis. 2d 290, 731 N.W.2d 240.

[12] *Vill. of Slinger v. City of Hartford,* 2002 WI App 187, ¶ 9, 256 Wis. 2d 859, 650 N.W.2d 81 (citing *City of Madison v. Town of Fitchburg,* 112 Wis. 2d 224, 228, 332 N.W.2d 782 (1983)).

[13] *Vill. of Slinger,* 256 Wis. 2d 859, ¶ 9 (citing *Ramme v. City of Madison,* 37 Wis. 2d 102, 116, 154 N.W.2d 296 (1967)).

[14] *Bence v. City of Milwaukee,* 107 Wis. 2d 469, 478, 320 N.W.2d 199 (1982).

¶ 27. Furthermore, although the State argues that only the person or institution who has been subpoenaed to produce documents has standing to oppose a subpoena issued under Wis. Stat. § 968.135, this position is belied by the language of the statute itself. Section 968.135 provides simply that subpoenas issued according to its provisions are subject to "[m]otions to the court, including, but not limited to, motions to quash or limit the subpoena." The statute does not limit the persons who may bring such motions.

¶ 28. The State's reliance on the legislative history to support its argument that the defendant does not have standing is unpersuasive. We agree with the State that a note to an early draft of Wis. Stat. § 968.135 acknowledges that the legislature intended § 968.135 to give prosecutors new authority to conduct investigations. Nevertheless, the legislative history does not limit the persons who may make a motion under § 968.135.[15]

¶ 29. For the reasons set forth, we conclude that the defendant has standing to challenge subpoenas issued to the banks under Wis. Stat. § 968.135.

B

¶ 30. The State concedes, and properly so, that contrary to the requirements of Wis. Stat. § 968.135 no showing of probable cause was made to the circuit court before the circuit court issued the subpoenas. We must therefore consider whether suppression of the bank documents is an appropriate remedy for the violation of § 968.135. The term "suppression" appears to be em-

---

[15] Bill Drafting File on 1979 S.B. 221, available at Wisconsin Legislative Reference Bureau, 1 East Main Street, Madison, Wisconsin.

ployed ordinarily when evidence is inadmissible for having been unlawfully obtained; the term "exclusion" ordinarily covers a violation of the rules of evidence.[16] The terms, however, are often used interchangeably inasmuch as suppression and exclusion have the same effect: The evidence cannot be presented in court.

¶ 31. In the present case, the circuit court ordered suppression of the bank documents on undisputed facts on the basis of Wis. Stat. § 968.135. The decision whether to suppress evidence, when based on application of a constitutional provision to undisputed facts on the record, is a question of law that we determine independently of the circuit court and court of appeals but benefiting from their analyses.[17] The present case does not involve constitutional interpretation.

¶ 32. Statutory interpretation and application of a statute to undisputed facts are ordinarily questions of

---

[16] *See State v. Eichman*, 155 Wis. 2d 552, 562–63, 570–73, 456 N.W.2d 143 (1990) (explaining that for purposes of a statute governing right of appeal, suppression "generally bars admission of evidence at trial as a result of governmental misconduct, such as a constitutional violation," while exclusion "generally involves only a violation of the rules of evidence") (citations omitted); *Black's Law Dictionary* (8th ed. 2004) 605, 1481 (defining "exclusion of evidence" as "[a] trial judge's determination that an item offered as evidence may not be presented to the trier of fact"; defining "suppression of evidence" as "[a] trial judge's ruling that evidence offered by a party should be excluded because it was illegally acquired").

[17] *State v. Drew*, 2007 WI App 213, ¶ 11, 305 Wis. 2d 641, 740 N.W.2d 404 (in considering a motion to suppress, a reviewing court accepts the circuit court's findings of fact unless clearly erroneous and independently decides the correct application of constitutional principles to those facts).

law that this court decides independently of the circuit court and court of appeals but benefiting from their analyses.[18] Accordingly, we review the circuit court's decision to suppress evidence under Wis. Stat. § 968.135 independently of the circuit court and court of appeals but benefiting from their analyses.

¶ 33. In deciding to suppress the defendant's bank documents as evidence, the circuit court reasoned that failure to suppress the bank documents would undermine the statute:

> If we would allow those documents to be subpoenaed, and tell the defendant she may have a personal right to sue the police department because they violated her rights, and then allowed the information that was illegally obtained in at the criminal trial, then we would emasculate the clear directives of 968.135 . . . .

¶ 34. The State contends that the circuit court erred as a matter of law in interpreting and applying Wis. Stat. § 968.135. The State asserts that § 968.135 does not permit a motion to suppress documents as a remedy for a violation of the statute. The State is correct that the statute is silent about the suppression of any evidence. The statute refers specifically only to quashing or limiting the subpoena; it makes no reference to suppressing or excluding evidence.

---

[18] *Marquette S. v. Bobby G.,* 2007 WI 77, ¶ 42, 301 Wis. 2d 531, 734 N.W.2d 81.

The decision whether to admit or exclude evidence based on a violation of evidentiary rules ordinarily lies within the circuit court's discretion. *Leitinger v. DBart, Inc.,* 2007 WI 84, ¶ 18, 302 Wis. 2d 110, 736 N.W.2d 1. In the instant case, the circuit court did not base its decision to suppress and exclude evidence on a violation of the evidentiary rules. The circuit court's order we review was based on an interpretation of Wis. Stat. § 968.135.

¶ 35. Statutory interpretation begins with the text of the statute. We also interpret statutory language in the context in which it is used and in light of the surrounding or closely related statutes. Statutes are interpreted to give effect to each word, to avoid surplusage, to fulfill the objectives of the statute, and to avoid absurd or unreasonable results.

¶ 36. Wisconsin Stat. § 968.135 provides in full:

**Subpoena for documents.** Upon the request of the attorney general or a district attorney and upon a showing of probable cause under s. 968.12, a court shall issue a subpoena requiring the production of documents, as specified in s. 968.13(2). The documents shall be returnable to the court which issued the subpoena. Motions to the court, including, but not limited to, motions to quash or limit the subpoena, shall be addressed to the court which issued the subpoena. Any person who unlawfully refuses to produce the documents may be compelled to do so as provided in ch. 785. This section does not limit or affect any other subpoena authority provided by law.

¶ 37. By its plain terms, Wis. Stat. § 968.135 provides that subpoenas issued under its terms may be reviewed by the circuit court upon "[m]otions to the court, including, but not limited to, motions to quash or limit the subpoena."

¶ 38. The question presented is the meaning of the statutory language "[m]otions to the court, including, but not limited to, motions to quash or limit the subpoena." More specifically, the question presented is: Does the class of motions that may be brought in response to a subpoena issued under Wis. Stat. § 968.135 include a motion to suppress documents obtained pursu-

ant to a subpoena issued in violation of Wis. Stat. § 968.135? Although the answer to this question is not explicitly set forth in the statute, the answer is evident upon close examination of the text of the statute.

¶ 39. The word "motions" is used in Wis. Stat. § 968.135 along with the phrase "including but not limited to" and along with the specific enumeration of motions "to quash" and "to limit" the subpoena. These three aspects of the text must be examined.

¶ 40. The word "motion" is broadly defined in the statutes as an application for an order.[19] The motion to suppress evidence in the present case falls within the definition of the word "motion."

¶ 41. We next examine the words "motions to the court including but not limited to." In common parlance these words plainly provide that the two enumerated motions are not the only motions that may be brought in response to a subpoena issued under § 968.135. So too in legislative parlance, the phrase "*including* but not limited to" in a statute is generally given an expansive meaning, indicating that the words that follow the general phrase are but a part of the whole.[20] In contrast, had the statute provided that a motion under § 968.135 *means* a motion to quash or a motion to limit, the word "means" would ordinarily limit any motion to the two enumerated motions.[21]

---

[19] Wis. Stat. (Rule) § 971.30(1).

[20] *Wis. Citizens Concerned for Cranes & Doves v. Wis. DNR*, 2004 WI 40, ¶ 17 n.11, 270 Wis. 2d 318, 677 N.W.2d 612.

The Wisconsin Bill Drafting Manual 2006–2007 explains that using the phrase "but is not limited to" along with the word "includes" is redundant. Wisconsin Bill Drafting Manual 2006–2007, § 2.01(1)(i) at 39.

[21] Wisconsin Bill Drafting Manual 2007–2008, § 2.01(1)(i) at 39.

¶ 42. We are thus led to the statutorily enumerated motions to quash or to limit. The question then becomes whether the enumeration of the two motions limits in some way other motions that may be brought under Wis. Stat. § 968.135. Three rules of statutory interpretation (sometimes called maxims or canons) assist us in answering this question. The canons are rules of statutory interpretation, not rules of law. Canons of statutory interpretation are aids to ascertaining the meaning of a statute. A canon is not a final or exclusive method of interpretation.[22]

¶ 43. One rule to be used in interpreting the word "includes" is that the word may be interpreted contrary to its ordinary, non-exclusive meaning. The word "includes" may therefore be read as a term of limitation or enumeration, so that a statute encompasses only those provisions or exceptions specifically listed. This court has, however, adopted this limited reading of "includes" only when there is some textual evidence that the legislature intended the word "includes" to be interpreted as a term of limitation or enumeration.[23]

---

[22] *State v. Campbell,* 102 Wis. 2d 243, 246, 306 N.W.2d 272 (Ct. App. 1981) (quoting *Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 89 (1934)).

[23] *State v. James P.,* 2005 WI 80, ¶ 26, 281 Wis. 2d 685, 698 N.W.2d 95; *Wis. Citizens Concerned for Cranes & Doves,* 270 Wis. 2d 318, ¶ 17 n.11.

This limited meaning of the word "includes" was reached by the court's using the maxim of statutory interpretation *expressio unius est exclusio alterius* ("the express mention of one matter excludes other similar matters not mentioned"). *See FAS, LLC v. Town of Bass Lake,* 2007 WI 73, ¶ 27, 301 Wis. 2d 321, 733 N.W.2d 287.

¶ 44. This limited reading of the word "includes" is not applicable to the present case. The text of Wis. Stat. § 968.135 contains no indication that the legislature intended the word "includes" as a term of limitation or enumeration or that the word "motions" be limited in Wis. Stat. § 968.135 to the two enumerated motions. Nor is there any other evidence of such a legislative intent.

¶ 45. A second rule to be used in interpreting the word "includes" is to give the word its common, broad, non-exclusive meaning.[24] Applying this rule of interpre-

The maxim *expressio unius est exclusio alterius* ordinarily applies when a statute lists, for example, persons, things, or forms of conduct without any general word preceding or following the listing. According to the maxim, the inference is that all omissions from the listing are excluded from application of the statute. 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* (7th ed. 2007) § 47:23, at 375–77.

Although the maxim *expressio unius est exclusio alterius* does not by its terms apply to Wis. Stat. § 968.135, because the statute has only an enumeration, not general language, the Wisconsin Bill Drafting Manual explains that our court has nevertheless applied the maxim of *expressio unius* to statutory language using the word "includes," when some factual evidence exists that the legislature intended to limit application of the statute to those items enumerated. Wisconsin Bill Drafting Manual 2006–2007, § 2.01(1)(i) at 39.

For additional cases considering the maxim *expressio unius est exclusio alterius, see, e.g., State v. Delaney,* 2003 WI 9, ¶¶ 22–23, 259 Wis. 2d 77, 658 N.W.2d 416; *State ex rel. Harris v. Larson,* 64 Wis. 2d 521, 527, 219 N.W.2d 335 (1974).

The cases sometimes refer to this *"exclusio"* maxim as *inclusio unius est exclusio alterius. See, e.g., Koestler v. Pollard,* 162 Wis. 2d 797, 804 n.4, 471 N.W.2d 7 (1991); *Roberts v. Sackville Canning Co.,* 247 Wis. 277, 279, 19 N.W.2d 295 (1945).

[24] Karl H. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes are to be Construed,* 3 Vand. L. Rev. 395, 405 (1950).

tation we would conclude that the motion to suppress in the present case falls within Wis. Stat. § 968.135.

¶ 46. A third rule to be used in interpreting the word "includes" is *ejusdem generis,* which literally means "of the same kind." This rule helps determine whether the statutorily enumerated motions limit in some way the other motions that may be brought under Wis. Stat. § 968.135. *Ejusdem generis* applies when a general word ("motions" in the present case) is used in a statute and is either preceded or followed by specific words in a statutory enumeration ("motions to quash or limit" a subpoena in the present case).[25]

---

When it adequately appears that the general words are not used in a restricted sense suggested by the rule *ejusdem generis,* the legislature's will that the general words are to be given a broad meaning will be given effect. *State v. Campbell,* 102 Wis. 2d 243, 246, 306 N.W.2d 272 (Ct. App. 1981) (quoting *Helvering v. Stockholms Enskilda Bank,* 293 U.S. 84, 89 (1934)).

When no inconsistency exists between specifically named particular words and the general statutory language or when the enumeration does not suggest a class, the maxim of *ejusdem generis* does not apply. 2A Singer & Singer, *supra* note 23, § 47:17, at 380, 387–89.

[25] *State v. Engler,* 80 Wis. 2d 402, 408, 259 N.W.2d 97 (1977); 2A Singer & Singer, *supra* note 23, § 47:17, at 357–80.

The maxim *ejusdem generis* is an attempt to reconcile the specific and the general by treating the particular words as indicating the class and the general words as extending the provisions to everything embraced in that class, though not specifically named by the particular words. *Ejusdem generis* is a common drafting technique to avoid spelling out in detail every contingency in which the statute could apply.

For additional cases considering the maxim *ejusdem generis, see, e.g., State v. Peters,* 2003 WI 88, ¶¶ 16–23, 25, 27–34,

¶ 47. According to the rule of *ejusdem generis*, the general word is construed to embrace only items similar in nature to the enumerated items. Furthermore, for the rule to apply, the items to which the general word is restricted must be germane to the objectives of the enactment.[26]

¶ 48. Applying the *ejusdem generis* rule of statutory interpretation, we must determine whether a motion to suppress documents obtained through a subpoena issued in violation of Wis. Stat. § 968.135 is similar in nature to the enumerated motions to quash or to limit the subpoena and is germane to the objectives of § 968.135. We must therefore compare motions to quash or limit a subpoena under Wis. Stat. § 968.135 with a motion to suppress documents obtained in violation of § 968.135.

¶ 49. A motion to quash or a motion to limit a subpoena is ordinarily made before the subpoena is complied with. The motion is aimed at preventing the State from obtaining all or some documents that the State may want to use as evidence. If the motion to

---

263 Wis. 2d 475, 665 N.W.2d 171; *State v. Campbell,* 102 Wis. 2d 243, 246–47, 306 N.W.2d 272 (Ct. App. 1981).

The maxim *ejusdem generis* is a variation of the maxim *noscitur a sociis.* The maxim *noscitur a sociis* means that words may be defined by accompanying words, that is, that the meaning of doubtful words may be determined by reference to their relationship with other associated words or phrases. *Wis. Citizens Concerned for Cranes & Doves,* 270 Wis. 2d 318, ¶ 40; 2A Singer & Singer, *supra* note 23, § 47:16, at 347–57. The doubtful word in this statute, "motions," would, under this doctrine, be defined by reference to its relationship with the accompanying enumerated motions.

[26] *Engler,* 80 Wis. 2d at 409.

quash the Wis. Stat. § 968.135 subpoena is granted, the State gets no documents. If a motion to limit a subpoena under § 968.135 is granted, the State may get only some documents. Each statutorily enumerated motion, if granted, prevents the State from obtaining and using as evidence all or some of the documents it seeks in a § 968.135 subpoena.

¶ 50. A motion to suppress documents obtained by a subpoena issued in violation of Wis. Stat. § 968.135, unlike a motion to quash or limit the subpoena, is ordinarily made after the subpoena is complied with. In the instant case, the defendant used the first. opportunity available to her to challenge the validity of the subpoena and the State's right to use as evidence the documents received as a result of the unlawful subpoena. The defendant did not have the opportunity to bring a motion to quash or to limit the subpoena before the banks complied with the subpoenas; the defendant did not know that the subpoenas had been issued.

¶ 51. A motion to suppress documents obtained by a subpoena issued in violation of Wis. Stat. § 968.135, like a motion to quash or limit the subpoena, is aimed at preventing the State from using as evidence all or some of the documents the State has sought through the subpoena. If the motion to suppress is granted, the State would be prevented from using as evidence the documents obtained through the subpoena. A motion to suppress documents obtained by a subpoena issued in violation of Wis. Stat. § 968.135 is thus similar in nature to the motions to quash or to limit the subpoena enumerated in § 968.135.

¶ 52. Furthermore, a motion to suppress documents obtained by a subpoena issued in violation of Wis. Stat. § 968.135 is germane to the objectives of Wis.

Stat. § 968.135, as are the motions to quash and to limit. The textually evident objectives of § 968.135 are to allow the State to acquire and use documents while also ensuring that the State meets statutory requirements that protect persons affected.

¶ 53. Wisconsin Stat. § 968.135 strictly limits a court's issuance of a subpoena for the production of documents. Only the attorney general or a district attorney may request a subpoena for the production of documents. The request must be ruled upon by the circuit court before the subpoena is issued. The circuit court may issue a subpoena for documents only upon a showing of probable cause. Motions to the circuit court to challenge the subpoena are expressly permitted by statute, including but not limited to motions to quash or to limit. The enumerated motions make clear that when the State fails to comply with § 968.135, the State's subpoena may be quashed or limited, removing the State's ability to obtain the documents and then use them in evidence.

¶ 54. A motion to suppress documents obtained by a subpoena issued in violation of Wis. Stat. § 968.135 is germane to these objectives of § 968.135. If the defendant is not given an opportunity to move to suppress the bank documents obtained by a subpoena issued in violation of the probable cause requirements set forth in Wis. Stat. § 968.135, a court would, as the circuit court explained, "emasculate the clear directives of § 968.135." If this court allowed documents obtained by a subpoena not complying with the probable cause requirement set forth in § 968.135 to be admitted in evidence, the safeguards of § 968.135 would be meaningless. If Wis. Stat. § 968.135 is to effect compliance with its requirements, we must interpret the statute as

encompassing a motion to suppress documents obtained in violation of the statute within the word "motions" in the statute.

¶ 55. Applying the doctrine of *ejusdem generis,* we conclude that a motion to suppress documents obtained in violation of Wis. Stat. § 968.135 is a motion of like kind to motions to quash or limit a subpoena and is germane to the objectives of § 968.135.

¶ 56. In applying each of the three rules for interpreting the word "includes" we have concluded that under each rule the defendant's motion to suppress the documents at issue in the present case was properly granted.

¶ 57. The State argues that our interpretation of Wis. Stat. § 968.135 is foreclosed by Wisconsin precedent. The State argues that Wisconsin cases hold that suppression of evidence is not available as a remedy except when evidence has been obtained in violation of a defendant's constitutional rights or when a statute "expressly" provides for suppression of evidence as a remedy. The State argues that in the present case no constitutional violation exists and Wis. Stat. § 968.135 does not expressly provide for suppression of evidence as a remedy for its violation.

¶ 58. The State relies on *State ex rel. Arnold v. County Court of Rock County,* 51 Wis. 2d 434, 439-40, 187 N.W.2d 354 (1971); *State ex rel. Peckham v. Krenke,* 229 Wis. 2d 778, 787, 601 N.W.2d 287 (Ct. App. 1999); and *State v. Verkuylen,* 120 Wis. 2d 59, 61, 352 N.W.2d 668 (Ct. App. 1984). These cases do not support the State's proposition of law, and therefore these cases are not precedent controlling the outcome of the instant case.

¶ 59. In *Arnold,* the Wisconsin Electronic Surveillance Control Law characterized the interceptions at

issue in that case as "unauthorized" but "not unlawful."[27] The Law explicitly stated that the information obtained from "unlawfully intercepted" communications was inadmissible as evidence at trial.[28] The Electronic Surveillance Control Law was silent, however, about whether the information obtained through unauthorized but "not unlawful" interceptions (as at issue in *Arnold*) was admissible in evidence.

¶ 60. In the face of this statutory silence, the *Arnold* court inferred that the results from the unauthorized but "not unlawful" interceptions at issue in that case were inadmissible. The *Arnold* court drew this inference from the Electronic Surveillance Control Law's procedure for court authorization of interceptions, as well as the Law's provisions governing authorization for the use and disclosure of intercepted communications.[29] The *Arnold* court declared that the information from the "not unlawful" interceptions was inadmissible because the interception was not in compliance with the statutory procedures for court authorization. The *Arnold* court explained its decision as follows: If the results of interceptions that were "not unlawful" but nevertheless did not comply with the Surveillance Law were admitted in evidence, "it was entirely useless to include in the act the careful delin-

[27] Wis. Stat. § 968.31(2) (1971).

[28] Wis. Stat. § 968.30(9)(a) (1971). Section 968.30(9)(a) expressly provides for suppression of the results of unlawfully intercepted wiretaps (and any information derived therefrom). Section 968.30(9) was not even mentioned in the *Arnold* decision because the intercepted communications at issue in Arnold had not been intercepted unlawfully.

[29] The dissent in *State ex rel. Arnold v. County Court of Rock County*, 51 Wis. 2d 434, 444–52, 187 N.W.2d 354 (1971) (Robert Hansen, J., dissenting), disagreed with drawing this inference.

eated provisions under which admissible evidence might be obtained by electronic surveillance with court approval. All the safeguards [of the Law] would be for naught . . . ."[30]

¶ 61. This same reasoning applies in the present case. In the present case, as in *Arnold*, the government did not comply with the statutory requirements to obtain the evidence in question. In addition, like in *Arnold*, we could not allow the admission of the evidence in the present case, as we explained previously, without rendering meaningless the safeguards established by Wis. Stat. § 968.135 for the issuance of subpoenas.

¶ 62. Thus *Arnold*, correctly read, stands for the proposition that evidence obtained in violation of a statute (or not in accordance with the statute) may be suppressed under the statute to achieve the objectives of the statute, even though the statute does not expressly provide for the suppression or exclusion of the evidence. This correct reading of *Arnold* has been lost in succeeding cases.

¶ 63. As recently as *State v. Raflik*, 2001 WI 129, ¶ 15, 248 Wis. 2d 593, 636 N.W.2d 690, *Arnold* was cited for the broad proposition that "[s]uppression is only required when evidence has been obtained in violation of a defendant's constitutional rights . . . or if a statute specifically provides for the suppression remedy." *See also State v. Popenhagen*, 2007 WI App 16, ¶ 25, 298 Wis. 2d 388, 728 N.W.2d 45 (quoting *Raflik*). *Raflik* involved a failure to record a telephonic application for a search warrant as required by statute. *Raflik*'s statement of suppression law may be interpreted in at least

---

[30] *Arnold*, 51 Wis. 2d at 443.

two ways: Suppression of evidence obtained in violation of the requirements of a statute is permissible at the discretion of the circuit court when a statute does not specifically require suppression. Or, a circuit court is prohibited from suppressing evidence obtained in violation of the requirements of a statute when the statute does not expressly require suppression. As the *Arnold* decision demonstrates, the first interpretation is the correct interpretation.

¶ 64. In *Peckham,* another case upon which the State relies, the court's statement of suppression law is somewhat different from the court's statement of suppression law in *Raflik.* Peckham involved the Department of Corrections opening the mail of an inmate in violation of administrative rules. In *Peckham,* the court of appeals asserted that "wrongfully or illegally obtained evidence is to be suppressed only where the evidence was obtained in violation of an individual's constitutional rights or in violation of a statute that *expressly* requires suppression as a sanction."[31] *Peckham's* statement of suppression law explicitly prohibits a circuit court from suppressing evidence obtained in violation of a statute when the statute does not expressly require suppression.[32]

---

[31] *State ex rel. Peckham v. Krenke,* 229 Wis. 2d 778, 787, 601 N.W.2d 287 (Ct. App. 1999) (emphasis added). The *Peckham* court also stated that Wisconsin "cases stand for the proposition that the exclusionary rule is applicable in civil and criminal proceedings only where the evidence sought to be excluded was obtained in violation of a constitutional right or a statute that specifically requires suppression of wrongfully or illegally obtained evidence as a sanction." 229 Wis. 2d at 787 (citation omitted).

[32] *Peckham* was so interpreted in *State v. Wallace,* 2002 WI App 61, ¶ 25, 251 Wis. 2d 625, 642 N.W.2d 549, and *State v. Jackowski,* 2001 WI App 187, ¶ 17, 247 Wis. 2d 430, 633 N.W.2d 649.

¶ 65. The *Peckham* court's statement of the law about violations of a statute and suppression is too broad. The cases the *Peckham* court cites to support this broad proposition of law merely cite to each other. No case states a rationale for the proposition of law.

¶ 66. Although in *Peckham* the court of appeals announced a broad rule of law, in examining the regulation at issue in the *Peckham* case, the court of appeals properly applied a narrower rule of law consistent with *Arnold* and the correct interpretation of *Raflik,* namely that the evidence obtained in that case was admissible if it did not "violate any statute or administrative rule that *expressly* or *impliedly* provided for the exclusion of such evidence."[33] The word "impliedly" is the operative word, and this sentence in *Peckham* comports with *Arnold* and the correct interpretation of *Raflik* permitting suppression at the discretion of the circuit court in applying a statute that does not specifically require suppression.

¶ 67. In *Verkuylen,* a search warrant case upon which the State relies, the court of appeals cited *Arnold* (without a citation to a page number) for the proposition that suppression is required only when a statute specifically requires suppression of unlawfully obtained evidence.[34] This statement of the law of suppression (like that stated in *Raflik,* but not like that stated in *Peckham*) implies that suppression may not be required but is permissible when a statute does not specifically require suppression. In keeping with this correct interpretation of the law of suppression, the *Verkuylen* court refused to suppress the evidence, not because the

---

[33] *Peckham v. Krenke,* 229 Wis. 2d at 794 (emphasis added).

[34] *State v. Verkuylen,* 120 Wis. 2d 59, 61, 352 N.W.2d 668 (Ct. App. 1984).

statute at issue did not specifically require suppression, but because the error in the search warrant was a result of judicial oversight that was corrected.[35]

■

¶ 68. *Arnold, Raflik, Peckham,* and *Verkuylen,* properly read, do not require the legislature expressly to require or allow suppression of unlawfully obtained evidence in order for a circuit court to grant a motion to suppress. In other words, the legislature need not express its intent to provide a remedy of exclusion or suppression of evidence with greater clarity than ordinarily required of any legislative enactment. The cases demonstrate that the circuit court has discretion to suppress or allow evidence obtained in violation of a statute that does not specifically require suppression of evidence obtained contrary to the statute, depending on the facts and circumstances of the case and the objectives of the statute.

¶ 69. The State cites a number of additional court of appeals cases for the proposition of law that suppression is not a proper remedy for a statutory violation. None of these cases is apposite. The court in each case cited by the State referred either to *Verkuylen* or to another case (1) for the ambiguous proposition that suppression is required only when a statute expressly requires suppression of the unlawfully obtained evidence;[36] (2) for the erroneous proposition that suppression is barred except when a statute expressly requires

---

[35] *Verkuylen,* 120 Wis. 2d at 61.

[36] *State v. Repenshek,* 2004 WI App 229, ¶¶ 23–24, 277 Wis. 2d 780, 691 N.W.2d 369; *State v. Keith,* 2003 WI App 47, ¶ 8, 260 Wis. 2d 592, 659 N.W.2d 403; *State v. Thompson,* 222 Wis. 2d 179, 189, 585 N.W.2d 905 (Ct. App. 1998); *State v. Mieritz,* 193 Wis. 2d 571, 574–77, 534 N.W.2d 632 (Ct. App. 1995).

suppression;[37] or (3) for the proposition that in a particular case suppression was not an appropriate remedy.[38] Not one case in this interlocking web of cases provides any reasoning in support of the proposition that a statute provides for the remedy of suppression only when the statute "expressly" provides for that remedy. The proposition appears to originate solely in, and to rest solely upon, a mistaken interpretation of *Arnold*.

¶ 70. The proposition of law that wrongfully or illegally obtained evidence may not be suppressed except when the evidence was obtained in violation of an individual's constitutional rights or in violation of a statute that *expressly* requires suppression of evidence as a sanction has been carried expressly or impliedly from case to case without any support or reasoning. This proposition is an unsupported mistaken statement of the law. Mistaken statements of the law should not constitute precedent that binds this court.[39] We do

---

[37] *State v. Cash*, 2004 WI App 63, ¶ 30, 271 Wis. 2d 451, 677 N.W.2d 709; *State v. Wallace*, 2002 WI App 61, ¶ 25, 251 Wis. 2d 625, 642 N.W.2d 549; *State v. Jackowski*, 2001 WI App 187, ¶ 17, 247 Wis. 2d 430, 633 N.W.2d 649.

[38] *See, e.g., State v. Piddington*, 2001 WI 24, ¶ 52, 241 Wis. 2d 754, 623 N.W.2d 528.

The State recognizes that in two John Doe cases this court indicated that suppression of evidence could be available as a remedy for "clear abuse" of the John Doe statutory process. *See State v. Noble*, 2002 WI 64, ¶¶ 28–31, 253 Wis. 2d 206, 646 N.W.2d 38; *State v. Cummings,* 199 Wis. 2d 721, 746, 546 N.W.2d 406 (1996).

[39] *Cf. State v. Kelty*, 2006 WI 101, ¶ 39, 294 Wis. 2d 62, 716 N.W.2d 886 (withdrawing "unnecessarily expansive language" from prior opinions).

more damage to the rule of law by refusing to admit error than by correcting an erroneous proposition of law.[40] The instant case presents an opportunity to correct an error of law that has been repeated in numerous cases, and we do so.

¶ 71. For the reasons set forth, we conclude that Wis. Stat. § 968.135 encompasses a motion to suppress documents in violation of Wis. Stat. § 968.135 and that the statute thus provides a remedy of suppression. As we have explained, unless the documents were suppressed as evidence in the present case, the safeguards established by Wis. Stat. § 968.135 for the issuance of subpoenas would be rendered meaningless. Accordingly, we conclude that the circuit court did not err in ordering that the bank documents obtained in violation of Wis. Stat. § 968.135 be suppressed.

## C

¶ 72. We turn lastly to the question whether the circuit court erred as a matter of law in granting the defendant's motion to suppress the incriminating statements the defendant made after police confronted her with the bank documents obtained in violation of Wis. Stat. § 968.135.

¶ 73. The circuit court explained its decision to suppress the defendant's statements in addition to the bank documents as follows:

> In regard to the statement of Ms. Popenhagen, I'm finding that the fruit of the poisonous tree doctrine does apply here just as it would in a bad search, standard search case without a warrant.

---

[40] *See Wenke v. Gehl Co.*, 2004 WI 103, ¶ 21, 274 Wis. 2d 220, 682 N.W.2d 405 ("We are not required to adhere to interpretations of statutes that are objectively wrong.").

¶ 74. The circuit court need not have reached beyond Wis. Stat. § 968.135 to justify suppressing the incriminating statements the defendant made after the police confronted the defendant with the unlawfully obtained bank documents.

¶ 75. The question whether Wis. Stat. § 968.135 permitted the defendant's motion to suppress the incriminating statements law enforcement officers obtained by confronting the defendant with the unlawfully obtained bank documents is, like the question of suppressing the bank documents considered above, a question of statutory interpretation that we decide independently of the circuit court and court of appeals but benefiting from their analyses.

¶ 76. We again apply the three rules to interpret the word "includes" in Wis. Stat. § 968.135 as it applies to the incriminating statements. We conclude that under each rule the defendant's motion to suppress incriminating statements that law enforcement officers obtained by confronting the defendant with the unlawfully obtained bank documents is encompassed within the class of motions contemplated by Wis. Stat. § 968.135. We reach this conclusion for essentially the same reasons that persuaded us that Wis. Stat. § 968.135 encompasses the defendant's motion to suppress the unlawfully obtained bank documents.

¶ 77. Under the first two rules of statutory interpretation of the word "includes," the motion to suppress the incriminating statements falls within Wis. Stat. § 968.135 for the reasons previously set forth.

¶ 78. Under the first rule of statutory interpretation applicable to the word "includes," the word "includes" is viewed narrowly and contrary to its ordinary,

non-exclusive meaning only when there is some textual evidence that the legislature intended the word "includes" to be interpreted as a term of limitation or enumeration. We have already decided that no evidence of such a legislative intent exists and this reading of the word "includes" is not applicable to the present case. *See* ¶ 38 above.

¶ 79. Under the second rule of statutory interpretation applicable to the word "includes," the word "includes" is given its common, broad, non-exclusive meaning. Applying this rule of interpretation we would conclude that the motion to suppress the incriminating statements in the present case is encompassed within the class of motions contemplated by Wis. Stat. § 968.135.

¶ 80. Applying the rule of *ejusdem generis* to the defendant's motion to suppress the incriminating statements that law enforcement officers obtained by confronting the defendant with the unlawfully obtained bank records, we examine whether the motion at issue is similar in nature to the statutorily enumerated motions to quash or to limit the subpoena and is germane to the objectives of Wis. Stat. § 968.135. *See* ¶ 42, above.

¶ 81. The defendant's motion to suppress the incriminating statements in the present case is substantially similar in nature to a motion to quash the subpoena. Both motions prevent the State's using evidence derived from the subpoena. The documents are derived from the unlawful subpoena and the incriminating statements are derived from the documents derived from the unlawful subpoena.

¶ 82. Had the defendant been able to bring and prevail upon a motion to quash the subpoena obtained in violation of Wis. Stat. § 968.135 before the banks turned over the documents demanded by the subpoena,

the State would not have been in a position to present the bank documents to the defendant during questioning or to use them to induce incriminating statements.

¶ 83. We do not know whether the defendant would have made incriminating statements had she not been confronted with the unlawfully obtained bank documents.[41] We do know, however, from the record that the defendant made the incriminating statements when she was confronted with the unlawfully obtained bank documents and that the incriminating statements are therefore directly related to the unlawfully obtained bank documents.

¶ 84. We next examine whether the motion to suppress the incriminating statements that law enforcement officers obtained by use of a subpoena issued in violation of Wis. Stat. § 968.135 is germane to the objectives of Wis. Stat. § 968.135. As we have explained, the objective of § 968.135 is to allow the State to acquire and use documents while also ensuring that the State meets statutory requirements that protect the privacy interests of persons affected by the subpoena. The objectives of § 968.135 are to limit strictly the conditions under which a subpoena may be obtained in order to protect persons whose records are being sought. The enumerated motions in § 968.135 make clear that when the State fails to comply with the statute's strict requirements, the State's subpoena may be quashed or limited, removing the State's ability to obtain the documents

---

[41] Had the defendant merely been told that the police had her bank documents, she might have questioned this assertion and doubted the police's claim in light of the numerous lengthy documents she probably had received (as we all have) from banks and other institutions advising that privacy interests are protected by law.

demanded in the subpoena and their use in evidence. *See* ¶¶ 46–47, above.

¶ 85. The defendant's motion to suppress the incriminating statements in the instant case serves these objectives. Suppressing incriminating statements derived directly from documents obtained in violation of Wis. Stat. § 968.135 is necessary to protect a person fully from the State's acquiring documents without complying with the statute. Unless the defendant's motion to suppress incriminating statements that law enforcement officers obtained by use of documents obtained by the unlawful subpoena were granted, the safeguards of § 968.135 would not be given full force and effect and would be significantly compromised.

¶ 86. If a person were permitted to bring a motion to quash the subpoena for bank documents unlawfully obtained but not permitted to bring a motion to suppress incriminating statements derived directly from the unlawfully obtained bank documents, the person would not get the full benefit of the protections of the statute, and the underlying objectives of the statute would be defeated.

¶ 87. When the legislature allows a motion to quash or limit a subpoena to prevent the State from enforcing a subpoena issued in violation of Wis. Stat. § 968.135, it is absurd and unreasonable to allow the State to use incriminating statements derived directly from such a subpoena and to gain an advantage by violating the statute. The legislature could not have intended that the statute would be interpreted in such a way to allow circumvention of the carefully drafted legislative requirements and safeguards for the issuance of a subpoena under Wis. Stat. § 968.135.[42]

---

[42] *See Wenke,* 274 Wis. 2d 220, ¶ 42 ("When construing statutes, courts must presume that the legislature intends for a

¶ 88. Applying the doctrine of *ejusdem generis,* we conclude that the motion to suppress these incriminating statements is a motion of like kind to motions to quash or limit a subpoena and is germane to the objectives of Wis. Stat. § 968.135.

¶ 89. In applying each of the three rules for interpreting the word "includes," we have concluded that under each rule of statutory interpretation, the defendant's motion to suppress the statements at issue in the present case was properly granted.

¶ 90. As we explained previously, this interpretation of Wis. Stat. § 968.135 is not foreclosed by Wisconsin precedent. Wisconsin cases do not hold, as the State urges, that unless a statute "expressly" provides for suppression of evidence as a remedy, a circuit court may not suppress the evidence.

¶ 91. Our conclusion in the present case for suppression of both the documents and the incriminating statements is similar to the conclusions reached by the United States Supreme Court in two cases involving wiretaps that were performed in contravention of the applicable federal statute governing legal wiretaps.

¶ 92. In the first case, *Nardone v. United States,* 302 U.S. 379 (1937), the United States Supreme Court interpreted the Communications Act of 1934, which was silent about the Act's application to federal agents and which did not explicitly provide for suppression as evidence of any communications obtained in violation of the Act. The Court interpreted the Act as covering agents of the federal government and as embracing suppression of evidence in court of the words obtained through the unlawful wiretaps.

---

statute to be interpreted in a manner that advances the purposes of the statute, not defeats those purposes.") (internal quotation marks and citation omitted).

¶ 93. In a subsequent case, *Nardone v. United States,* 308 U.S. 338, 340 (1939), the Court was faced with the question whether under the Communications Act of 1934 only the "exact words heard through forbidden interceptions" were to be suppressed as evidence (as decided in the first *Nardone* case), or whether evidence procured through the use of knowledge gained from the forbidden conversations should also be suppressed. The Court concluded that in accommodating the concerns of crime detection and effective law enforcement and protection of individual privacy, "meaning must be given to what Congress has written, even if not in explicit language, so as to effectuate the policy which Congress has formulated."[43] The Court concluded that reading the Act to suppress only the exact words heard through the forbidden interceptions but at the same time to allow the use of evidence derived from the exact words intercepted would largely stultify the policy of suppressing the exact words intercepted. The Court relied on the words of *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392: "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all."[44] The Court went on to say: "A decent respect for the policy of Congress must save us from imputing to it a self-defeating, if not disingenuous purpose."[45]

¶ 94. In the *Nardone* cases, as well as in the present case, the law being interpreted is silent about suppression of evidence obtained as a result of a statutory violation. In the first *Nardone* case, the Court

---

[43] *Nardone v. United States,* 308 U.S. 338, 340 (1939).

[44] *Id.* at 340–41.

[45] *Id.* at 341.

suppressed the words obtained by wiretaps that violated of the Act. In the present case we suppress the documents obtained by subpoenas that violated the statute. In the second *Nardone* case, the Court suppressed information obtained by use of the words obtained by the improper wiretaps. In the present case we suppress incriminating statements obtained by use of the documents obtained by improper subpoenas.

¶ 95. The *Nardone* cases support our approach to statutory interpretation in the present case. The instant case, however, presents an easier task of statutory interpretation than did the *Nardone* cases. In the instant case the motions to suppress the documents and the incriminating statements are in the very text of the statute, that is, the text explicitly provides for "motions to the court, including, but not limited to, motions to quash or limit the subpoena." The Act interpreted in the *Nardone* cases had no such similar broadly worded language allowing a motion to suppress evidence.

¶ 96. For the reasons set forth, we conclude that the circuit court did not err in suppressing the incriminating statements that the defendant made after police confronted her with the bank documents obtained in violation of Wis. Stat. § 968.135. Unless the incriminating statements were suppressed as evidence in the present case, the safeguards established by Wis. Stat. § 968.135 for the issuance of subpoenas would be rendered meaningless.

\* \* \* \*

¶ 97. We conclude that suppression of both the bank documents and the defendant's incriminating statements in the present case is an appropriate remedy

643

when the bank documents were obtained in violation of Wis. Stat. § 968.135 and the incriminating statements were obtained by law enforcement officers confronting the defendant with the unlawfully obtained bank documents. Accordingly, we conclude that the circuit court did not err in granting the defendant's motion to suppress evidence of the bank documents and the defendant's incriminating statements. We reverse the decision of the court of appeals and affirm the circuit court's order to suppress the bank documents and incriminating statements at issue. Because we affirm the circuit court's order on statutory grounds, we need not and do not reach the additional issues presented by the defendant. We leave the interpretation of the federal and state constitutional provisions and federal statutes relating to obligations of banks that the court of appeals addressed for another case in which these issues are determinative.

*By the Court.*—The decision of the court of appeals is reversed. The cause is remanded to the circuit court for further proceedings not inconsistent with this opinion.

| STATE OF WISCONSIN CIRCUIT COURT ONEIDA COUNTY |

| STATE OF WISCONSIN | SUBPOENA AND |
|---|---|
| vs. | CERTIFICATE OF SERVICE |

| The State of Wisconsin to: | SERVICE INFORMATION |
|---|---|
| | Date Served Time Served |
| | *8-23-04* *2:30 P* |
| River Valley Bank | Manner Served: |
| 8590 Highway 51 North | ✓ Personal |
| Minocqua, Wisconsin 54548 | ___ Substitute _____ |
| (715) 358-3434 | Serving Agency *Minocqua P.D.* |
| | Served by: _____ |

**PURSUANT TO SECTION 805.07 OF THE WISCONSIN STATUTES, YOU ARE HEREBY COMMANDED TO APPEAR IN PERSON AND GIVE EVIDENCE:**

### APPEARANCE INFORMATION

ONEIDA COUNTY CIRCUIT COURT: DATE: August 30, 2004 TIME: 9:30 a.m.

LOCATION: Oneida County Courthouse / Rhinelander, Wisconsin

PRESIDING OFFICIAL: Honorable Robert E. Kinney

**Subpoena Duces Tecum:** Bringing with you all bank records for the account of Michelle Popenhagen from January 2003 to August 2004. In lieu of appearing, copies may be mailed to Sergeant Todd Hanson of the Minocqua Police Department, P. O. Box 346, Minocqua, Wisconsin 54548.

**FAILURE TO APPEAR MAY RESULT IN PUNISHMENT FOR CONTEMPT, WHICH MAY INCLUDE MONETARY PENALTIES, IMPRISONMENT & OTHER SANCTIONS**

| If you have any questions about this Subpoena, please contact: | BY: *Robert E. Kinney* |
|---|---|
| Name: Patrick F. O'Melia | |
| Title: District Attorney | |
| Address: P.O. Box 400 | DATE: August 18, 2004 |
| Rhinelander, WI 54501 | |
| Telephone: (715)369-6133 / (800)841-8030 | |

| WITNESS INFORMATION | Date Witness Appeared:_____ |
|---|---|

Telephone Number:_____ Mileage:_____

Address Correction: Signature of Witness_____

1

645

STATE OF WISCONSIN ___ CIRCUIT COURT ___ ONEIDA COUNTY

| STATE OF WISCONSIN | SUBPOENA AND |
|---|---|
| vs. | CERTIFICATE OF SERVICE |

| The State of Wisconsin to: | SERVICE INFORMATION |
|---|---|
| F&M Bank<br>625 Chippewa Street<br>Rhinelander, Wisconsin 54501<br><br>(715) 356-1444 | Date Served: *B-23-04* Time Served: *2.00 P*<br>Manner Served:<br>✓ Personal<br>___ Substitute ___<br><br>Serving Agency *Minocqua P.D*<br>Served by: *Todd Hanson* |

**PURSUANT TO SECTION 805.07 OF THE WISCONSIN STATUTES,
YOU ARE HEREBY COMMANDED TO APPEAR IN PERSON AND GIVE EVIDENCE:**

**APPEARANCE INFORMATION**

ONEIDA COUNTY CIRCUIT COURT: DATE: August 30, 2004 TIME: 9:30 a.m.

LOCATION: Oneida County Courthouse / Rhinelander, Wisconsin

PRESIDING OFFICIAL: Honorable Robert E. Kinney

<u>Subpoena Duces Tecum:</u> Bringing with you all bank records for the account of Michelle Popenhagen from January 2003 to August 2004. In lieu of appearing, copies may be mailed to Sergeant Todd Hanson of the Minocqua Police Department, P. O. Box 346, Minocqua, Wisconsin 54548.

FAILURE TO APPEAR MAY RESULT IN PUNISHMENT FOR CONTEMPT, WHICH MAY
INCLUDE MONETARY PENALTIES, IMPRISONMENT & OTHER SANCTIONS

| If you have any questions about this<br>Subpoena, please contact:<br>Name: Patrick F. O'Melia<br>Title: District Attorney<br>Address: P.O. Box 400<br> Rhinelander, WI 54501<br>Telephone: (715)369-6133 / (800)841-8030 | BY: *Robert Kinney*<br><br>DATE: August 18, 2004 |
|---|---|

| WITNESS INFORMATION | Date Witness Appeared: ___ |
|---|---|

Telephone Number. ___ Mileage: ___

Address Correction: ___ Signature of Witness ___

2

STATE OF WISCONSIN CIRCUIT COURT ONEIDA COUNTY

| STATE OF WISCONSIN | SUBPOENA AND |
|---|---|
| vs. | CERTIFICATE OF SERVICE |

| The State of Wisconsin to: | SERVICE INFORMATION |
|---|---|
| | Date Served Time Served |
| | 9-3-04 1:00 PM |
| US Bank | Manner Served: |
| 9670 Highway 70 West | __✓__ Personal |
| P. O. Box 787 | ____ Substitute _____ |
| Minocqua, Wisconsin 54548 | |
| | Serving Agency _Minocqua_ P.D |
| (715) 356-9531 | Served by _____ |

PURSUANT TO SECTION 805.07 OF THE WISCONSIN STATUTES,
YOU ARE HEREBY COMMANDED TO APPEAR IN PERSON AND GIVE EVIDENCE:

APPEARANCE INFORMATION

ONEIDA COUNTY CIRCUIT COURT: DATE: September 15, 2004 TIME: 9:30 a.m.

LOCATION: Oneida County Courthouse / Rhinelander, Wisconsin

PRESIDING OFFICIAL: Honorable Mark A. Mangerson

Subpoena duces tecum: Bringing with you all bank records for the account of Michelle Popenhagen from January 2003 to August 2004.

FAILURE TO APPEAR MAY RESULT IN PUNISHMENT FOR CONTEMPT, WHICH MAY
INCLUDE MONETARY PENALTIES, IMPRISONMENT & OTHER SANCTIONS

| If you have any questions about this Subpoena, please contact: | BY: |
|---|---|
| Name: Patrick F. O'Melia | |
| Title: District Attorney | |
| Address. P.O. Box 400 | DATE: August 31, 2004 |
| Rhinelander, WI 54501 | |
| Telephone: (715)369-6133 / (800)841-8030 | |
| WITNESS INFORMATION | Date Witness Appeared:_____ |

Telephone Number:_____ Mileage:_____

Address Correction: Signature of Witness:

3

¶ 98. DAVID T. PROSSER, J. (*concurring*). The State obtained the bank records of Michelle Popenhagen from local banks after it issued three subpoenas duces tecum, each of which was signed by an Oneida County circuit judge. The process used to obtain these subpoenas is not clear. What is clear, however, is that: (1) the State used the wrong subpoena forms; (2) the State never submitted evidence of probable cause for the subpoenas to the court; (3) the judges made no findings of probable cause for the subpoenas; and (4) the documents obtained from the subpoenas were not returned to the court. Consequently, after two hearings on Popenhagen's motion to suppress her bank records and the incriminating statements she made after being confronted by police with her bank records, Circuit Judge Mark Mangerson suppressed the records and the statements.

¶ 99. I concur in this result. However, because I share some of the concerns voiced in Justice Roggensack's dissenting opinion, I write separately to explain my position.

I

¶ 100. The owners of Save More Foods in Minocqua terminated Michelle Popenhagen, a longtime employee who worked as their bookkeeper, because they detected financial irregularities at the store. Several weeks later, the owners complained to the Minocqua Police Department that they believed Popenhagen had embezzled a substantial amount of money. In the subsequent investigation, Todd Hanson, a detective with the Minocqua Police Department, "filled out an affidavit" for the Oneida County District Attorney to support subpoenas to local banks to obtain Popenhagen's bank records. In a police report, Hanson stated that he faxed a request for subpoenas "to the Oneida DA on 8/16/04 @ 3:00 p.m."

648

¶ 101. The district attorney's office then prepared three subpoenas, two dated August 18, 2004, and one dated August 31, 2004, to three different banks.

¶ 102. All three subpoenas contain the following language in bold type: "PURSUANT TO SECTION 805.07 OF THE WISCONSIN STATUTES, YOU ARE HEREBY COMMANDED TO APPEAR IN PERSON AND GIVE EVIDENCE". All three subpoenas give a date and time to appear in circuit court. Two of the subpoenas also state: "In lieu of appearing, copies may be mailed to Sergeant Todd Hanson of the Minocqua Police Department, P.O. Box 346, Minocqua, Wisconsin 54548."

¶ 103. All three subpoenas were served personally on the banks by Todd Hanson. Thereafter, the banks did not appear in court; instead, they turned over the records to the Minocqua Police Department.

¶ 104. As noted, the subpoenas were issued pursuant to Wis. Stat. § 805.07. Wisconsin Stat. § 805.07 reads in part as follows:

> Subpoena. (1) Issuance and service. *Subpoenas shall be issued and served in accordance with ch. 885.* A subpoena may also be issued by any attorney of record in a civil action or special proceeding to compel attendance of witnesses for deposition, hearing or trial in the action or special proceeding.
>
> (2) *Subpoena requiring the production of material. (a) A subpoena may command the person to whom it is directed to produce the books, papers, documents or tangible things designated therein.*
>
> (b) *Notice of a 3rd-party subpoena issued for discovery purposes shall be provided to all parties at least 10 days before the scheduled deposition in order to preserve their right to object. If a 3rd-party subpoena*

*requests the production of books, papers, documents, or tangible things that are within the scope of discovery under s. 804.01(2)(a), those objects shall not be provided before the time and date specified in the subpoena.* The provisions under this paragraph apply unless all of the parties otherwise agree.

(3) Protective orders. Upon motion made promptly and in any event at or before the time specified in the subpoena for compliance therewith, the court may (a) quash or modify the subpoena if it is unreasonable and oppressive or (b) condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents, or tangible things designated therein. (Emphasis added.)

¶ 105. Wisconsin Stat. § 805.07(1) refers to "ch. 885." Wisconsin Stat. § 885.01 reads in part:

Subpoenas, who may issue. The subpoena need not be sealed, and may be signed and issued as follows:

(1) *By any judge* or clerk of a court or court commissioner or municipal judge, within the territory in which the officer or the court of which he or she is the officer has jurisdiction, *to require the attendance of witnesses and their production of lawful instruments of evidence in any action, matter or proceeding pending* or to be examined into *before any court,* magistrate, officer, arbitrator, board, committee or other person authorized to take testimony in the state.

(2) By the attorney general or any district attorney or person acting in his or her stead, *to require the attendance of witnesses,* in behalf of the state, in any court or before any magistrate and from any part of the state. (Emphasis added.)

¶ 106. The record shows that the district attorney's office executed three subpoenas pursuant to

Wis. Stat. §§ 805.07 and 885.01(1). Each subpoena was signed by a judge. Subpoenas issued under these statutes had to be signed by a judge or clerk because there was never "a civil action" in which a subpoena could have been issued by an attorney of record (Wis. Stat. § 805.07(1)) and because the district attorney was seeking "lawful instruments of evidence" (documents), not merely the "attendance" of a witness at a hearing (Wis. Stat. § 885.01(2)). Nonetheless, the district attorney's office used the wrong subpoena forms and followed the wrong procedure, inasmuch as no legal action of any kind was pending when the subpoenas were issued. Moreover, the notice that Wis. Stat. § 805.07(2)(b) requires be given to a "party" concerning a "3rd-party subpoena issued for discovery purposes" was not given to Popenhagen. In addition, Popenhagen alleged that the district attorney's office never asked the court to schedule return dates in court because the district attorney never wanted or expected witnesses to appear in court. The stated return dates were fictitious, and the objects of the subpoena were not brought to court.

¶ 107. In sum, the three subpoenas were defective in every respect. The circuit court was not powerless to address defective subpoenas issued pursuant to Wis. Stat. § 805.07. The court's authority to quash subpoenas is explicitly provided in Wis. Stat. § 805.07(3).

¶ 108. Probable cause is not required for a subpoena issued pursuant to Wis. Stat. § 805.07. The reason is that § 805.07 is designed to secure the presence of a witness in a *pending* action, and the statute permits a "party" in that action to seek a protective order if the subpoena is unreasonable and oppressive.

¶ 109. Here, of course, there was no pending action and thus no opposing "party" to serve with notice. The district attorney erred. Even if the district

attorney's office could concoct some argument for using subpoenas under § 805.07, it failed to comply with the terms of that statute. A circuit court cannot be denied the power to remedy an obvious and undisputed misuse of its judicial authority by the district attorney.

## II

¶ 110. The parties now appear to agree that the State *should* have sought subpoenas under Wis. Stat. § 968.135, not § 805.07. Wisconsin Stat. § 968.135 reads as follows:

> Subpoena for documents. Upon the request of the attorney general or a district attorney and *upon a showing of probable cause under s. 968.12,* a court shall issue a subpoena requiring the production of documents, as specified in s. 968.13(2). The documents shall be returnable to the court which issued the subpoena. Motions to the court, including, but not limited to, motions to quash or limit the subpoena, shall be addressed to the court which issued the subpoena. Any person who unlawfully refuses to produce the documents may be compelled to do so as provided in ch. 785. This section does not limit or affect any other subpoena authority provided by law. (Emphasis added.)

¶ 111. To obtain subpoenas under this statute, a district attorney is required to provide the court with "probable cause under s. 968.12," meaning that a district attorney is required to proceed as though he were requesting a search warrant under Wis. Stat. § 968.12.[1]

¶ 112. The Oneida County District Attorney *could* have provided the court with a sworn complaint or

---

[1] Wisconsin Stat. § 968.12 reads in part as follows:

Search warrant. (1) Description and issuance. A search warrant is an order signed by a judge directing a law enforcement officer to conduct a search of a designated person, a designated

affidavit, or sworn recorded testimony, showing probable cause. Wis. Stat. § 968.12(2). The court would then have responded with a determination whether probable cause for the subpoenas had been shown. Wis. Stat. § 968.12(3)(c). None of this happened. None of this happened because the district attorney's office followed the wrong procedure by using Wis. Stat. § 805.07.

¶ 113. Wisconsin Stat. § 968.135 is not the only subpoena statute available to district attorneys. For instance, Wis. Stat. § 885.01 is made applicable in criminal proceedings by Wis. Stat. § 972.11. However, subpoena statutes *other than Wis. Stat. § 968.135* appear to require some sort of pending action. Wisconsin Stat. § 968.135 does not require a pending action, but it does require the district attorney to follow the same procedures he would use in obtaining a search warrant under § 968.12. Wisconsin Stat. § 968.135 provides for subsequent motions to the court. The statute implies that when the procedures in the statute are not followed, the court may deal with a defective subpoena the same way it would deal with a defective search warrant.

¶ 114. Judge Mangerson stated that a subpoena under Wis. Stat. § 968.135 "is directly analogous to a search warrant." He understood—and I agree—that the remedy for a defective subpoena under this statute is analogous to the remedy for a defective search warrant

object or a designated place for the purpose of seizing designated property or kinds of property. A judge shall issue a search warrant if probable cause is shown.

(2) Warrant upon affidavit. A search warrant may be based upon sworn complaint or affidavit, or testimony recorded by a phonographic reporter or under sub. (3)(d), showing probable cause therefor. The complaint, affidavit or testimony may be upon information and belief.

Wis. Stat. § 968.12(1)-(2).

under Wis. Stat. § 968.12. That is why I support the court's decision to exclude the specific documents obtained from the three subpoenas and the statements Popenhagen made after she was confronted with these improperly obtained documents.

¶ 115. The State is not entitled to utilize incriminating statements obtained from Popenhagen after she was confronted with her bank records simply because it completely disregarded the applicable statute (§ 968.135) to obtain those bank records.

### III

¶ 116. This brings us to the question of what authority should be employed to suppress Popenhagen's statements without altering longstanding Wisconsin law.

¶ 117. In *State v. Raflik,* 2001 WI 129, 248 Wis. 2d 593, 636 N.W.2d 690, this court stated:

> The suppression of evidence is not a constitutional right, but rather it is a judge-made rule used to deter misconduct by law enforcement officials. *Stone v. Powell,* 428 U.S. 465, 482 (1976). Suppression is only *required* when evidence has been obtained in violation of a defendant's constitutional rights, *State v. Hochman,* 2 Wis. 2d 410, 419, 86 N.W.2d 446 (1957), or if a statute specifically provides for the suppression remedy. *State ex rel. Arnold v. County Court of Rock County,* 51 Wis. 2d 434, 439–40, 187 N.W.2d 354 (1971); *see also State ex rel. Peckham v. Krenke,* 229 Wis. 2d 778, 787, 601 N.W.2d 287 (Ct. App. 1999); *State v. Verkuylen,* 120 Wis. 2d 59, 61, 352 N.W.2d 668 (Ct. App. 1984).

*Id.,* ¶ 15 (emphasis added).

¶ 118. The *Raflik* court went on to explain that there is no *specific* statutory remedy provided for the failure to record a telephonic search warrant application

under Wis. Stat. § 968.12. *Id.* "Thus, the only question that remains is whether the failure to record the warrant application and the subsequent reconstruction of the application violated a constitutional right." *Id.*

¶ 119. In my view, a violation of Wis. Stat. § 968.12 procedure permits but does not require the remedy of suppression in situations where an error by the state does not violate a constitutional right. The decision whether to suppress evidence is informed by Wis. Stat. § 968.22, which reads: "Effect of technical irregularities. No evidence seized under a search warrant shall be suppressed because of technical irregularities not affecting the substantial rights of the defendant."

¶ 120. Wisconsin Stat. § 968.22 implies that evidence can be suppressed by a court if the court determines that a statutory irregularity cannot reasonably be described as "technical" or if the statutory irregularity has affected the substantial rights of the defendant.

¶ 121. This view is supported by the cases. In *State v. Tye,* 2001 WI 124, 248 Wis. 2d 530, 636 N.W.2d 473, the state obtained a search warrant for the defendant's residence. *Id.,* ¶ 4. The state presented probable cause for the warrant to the court. *Id.,* ¶ 5. However, the investigator who prepared the affidavit to support the warrant failed to sign and swear to the truth of the affidavit. *Id.* The circuit court subsequently suppressed evidence seized at the residence. *Id.,* ¶ 2. This court affirmed, concluding that the failure to sign the affidavit and swear to its truthfulness was "a matter of substance, not form, and it is an essential component of the Fourth Amendment and legal proceedings." *Id.,* ¶ 19. The court's holding stated black letter law about the suppression of evidence obtained in violation of a defendant's *constitutional* rights.

¶ 122. A different kind of defect was noted in *State v. Meier,* 60 Wis. 2d 452, 210 N.W.2d 685 (1973). Police executed a search warrant for Meier's residence on Wednesday, April 26, 1972, at 9 p.m. *Id.* at 455. The warrant was "returned" to the clerk of court on Monday, May 1, 1972, at 12:06 p.m. *Id.* Meier claimed that authorities had violated Wis. Stat. § 968.17 by failing to return the warrant "within 48 hours after execution" to the clerk designated in the warrant, and that evidence from the search had to be suppressed. *See id.* at 456. This court disagreed. In computing time, the trial court excluded the weekend—the period from 4:30 p.m. Friday to 8 a.m. Monday—from the 48–hour period. *Id.* at 459. The court said: "The trial court's construction of sec. 968.17, Stats., is reasonable in view of the fact that the time requirement contained therein is of a ministerial nature *and that there is nothing in the record to indicate that the rights of the defendant were in any way prejudiced." Id.* at 459–60 (emphasis added).

¶ 123. This theme was echoed in *State v. Elam,* 68 Wis. 2d 614, 229 N.W.2d 664 (1975), where the defendant moved to suppress evidence because a transcript of the search warrant testimony was not filed within the time limit—"within 5 days" after the execution of the search warrant—prescribed in Wis. Stat. § 968.17(2). *Id.* at 618–19. The trial court suppressed the evidence because the transcript was not filed until more than ten months after the execution of the warrant, even though it found the defendant was not prejudiced by the delay. *Id.* at 619. This court reversed, saying: "[Wisconsin Stat. § 968.22], *together with the finding of no prejudice to the defendant* . . . would dispose of the issue. . . . The time for filing . . . is . . . a ministerial duty, a violation of which does not invalidate the search *absent prejudice to the rights of the defendant." Id.* at 620 (emphasis added).

¶ 124. In *State v. Nicholson,* 174 Wis. 2d 542, 497 N.W.2d 791 (Ct. App. 1993), police obtained a search warrant for an upper east apartment in a two-story, multi-family apartment building at 1512 State Street in Racine. *Id.* at 544–45. Although police executed the warrant at the correct apartment, the address turned out to be *1510* State Street, so that the address in the warrant was not correct. *Id.* at 545. The circuit court and court of appeals upheld the warrant and refused to suppress evidence. The court of appeals cited Wis. Stat. § 968.22 and stated: "The warrant's recital of the 1512 State Street address was a technical irregularity under the facts of this case. We agree with the trial court that *this irregularity did not affect any substantial right of Nicholson." Id.* at 549 (emphasis added) (footnote omitted).

¶ 125. In the *Raflik* case, where the government mistakenly failed to record the application for a warrant by telephone, the circuit court did not suppress the evidence because the search warrant was grounded in probable cause, and the search was not unreasonable because the court promptly took steps to reconstruct the application. *Raflik,* 248 Wis. 2d 593, ¶¶ 8–10. This court affirmed. *Id.,* ¶ 57. The inadvertent failure to record the application did not prejudice the defendant. *See id.,* ¶¶ 42, 52.

¶ 126. These cases, together with Wis. Stat. § 968.22, suggest that evidence must not be suppressed for a mere statutory violation or a technical irregularity of search warrant procedure *unless* the violation or irregularity is material or the violation or irregularity has prejudiced the defendant or affected the defendant's substantial rights. Conversely, if a statutory violation or statutory irregularity of search warrant procedure is material or if the violation or irregularity has prejudiced

657

the defendant or affected the defendant's substantial rights, the court has implicit, if not explicit, statutory authority to suppress the tainted evidence. *Id.* This is not new ground. It is a reasonable synthesis of prior law.

¶ 127. Suppression of evidence is a drastic remedy. Suppression is *required* when evidence has been obtained in violation of a defendant's *constitutional* rights. *Raflik,* 248 Wis. 2d 593, ¶ 15. Suppression of evidence obtained in violation of a statute is not permitted unless a statute either authorizes or requires suppression. *See id.; Verkuylen,* 120 Wis. 2d at 61.

¶ 128. In evaluating statutory irregularity with respect to a search warrant or a Wis. Stat. § 968.135 subpoena, the court should weigh the gravity of the statutory violation against the strong public interest in the availability of reliable evidence. *See, e.g., Brewer v. Williams,* 430 U.S. 387, 424 (1977) (weighing the deterrent effect of suppression against "the strong interest under any system of justice of making available to the trier of fact all concededly relevant and trustworthy evidence" (citation omitted)). Suppression of evidence is intended to deter misconduct. *Raflik,* 248 Wis. 2d 568, ¶ 15. The public interest is not served by the suppression of evidence resulting from conduct that is inadvertent or unintentional unless that conduct results in prejudice to the defendant.

¶ 129. In this case, the State's misuse of the subpoena statutes was serious and material, not technical. The State used the wrong subpoena forms, pursuant to the wrong statute (Wis. Stat. § 805.07), and it failed to accord the protections required by that wrong statute. It could not bootstrap its position by trying to bring the subpoenas under the applicable subpoena statute (Wis. Stat. § 968.135) because it totally disregarded the procedures and protections in that statute.

In addition, the defendant was prejudiced by the State's errors when she blurted out incriminating statements after being confronted with her improperly obtained bank records. Finally, the court's authority was abused. In this case, then, suppression of Popenhagen's statements is a sanction for the improper use of the subpoena power by the district attorney's office.

## IV

¶ 130. The last sentence of Wis. Stat. § 968.135 should not be overlooked. It reads: "This section does not limit or affect any other subpoena authority provided by law." Wis. Stat. § 968.135.

¶ 131. In my view, the State is entitled to use Wis. Stat. § 885.01 for subpoenas duces tecum of bank records at Popenhagen's trial. Popenhagen's bank records are business records. These records can be obtained from the banks by following proper procedure. The owners of Save More Foods and their insurer could also obtain Popenhagen's bank records if they sued her to recover their damages. In short, excluding the defendant's statements will not permit the defendant to escape unscathed.

## V

¶ 132. The circuit court's suppression of Popenhagen's bank records and incriminating statements was appropriate. The State used the wrong subpoena forms and followed the wrong procedure. As a result, its subpoenas were defective. However, the State's subpoena access to these records is not limited to access under Wis. Stat. § 968.135. The State is entitled to use Wis. Stat. § 885.01(1) *after* it has filed a criminal charge.

The State can do over the subpoenas of the bank records. It cannot do over its blunders in obtaining Popenhagen's statements. Accordingly, I respectfully concur.

¶ 133. ANNETTE KINGSLAND ZIEGLER, J. (*concurring in part, dissenting in part*). The majority decision, which suppresses both the documents and the statements, proceeds much further than necessary. I agree that the circuit court has authority to preclude the documents and to require the State to go through the correct process to obtain them for future use. However, I disagree with doing so on a statutory or constitutional basis. If there is such authority to preclude the documents, it lies in the court's inherent authority to administer justice. Under the facts presented, however, no authority exists for suppressing the statements.

¶ 134. The majority finds that the statutory language calls for suppression as a remedy. If the language of this statute provides for suppression, then almost any statute from this point forward does so as well. That has never been the law. Moreover, no authority exists for going even further and suppressing the statements based on the statute, the fruit of the poisonous tree doctrine, or otherwise. This is a good example of bad facts making bad law.

¶ 135. The law is well established that unless the statute provides for suppression or unless constitutional protections exist, suppression is not a remedy. The majority decision extends the law to unworkable standards and leaves a black hole with respect to the suppression of evidence. Suppression law is no longer linked to the language of the statute, nor is it tethered to a constitutional right. No longer is there any stop-

ping point to suppression. As a result, I cannot join the majority and, instead, must concur in part and dissent in part.

¶ 136. Under the unique facts of this case, the circuit court should have the authority to preclude the documents because the subpoena at issue was fatally defective: (1) the district attorney used the wrong subpoena (a civil subpoena was used by the district attorney in a criminal investigation); (2) the district attorney had no authority to obtain documents by using the civil statutes; while there is no record that this was done in bad faith, using the wrong subpoena and civil procedure were more than a scriveners' error; (3) although the record reflects that the investigating officer faxed a probable cause affidavit to the district attorney, nothing suggests that a probable cause affidavit was submitted to the court, and no such document is in the record; (4) nothing suggests that a probable cause determination was made by any judicial officer;[1] (5) the documents sought were not returned through the circuit court but instead were returned directly to the State; and (6) all safeguards at the circuit court failed.

[1] Not only was no probable cause found prior to the subpoenas being issued, but no subsequent opportunity existed for a judicial officer to correct this problem. In this case, Judge Kinney signed the civil subpoena that produced the bank records from F&M Bank and used in eliciting incriminating statements from the defendant. No probable cause affidavit was attached to that subpoena. Judge Mangerson presided over the subsequent suppression hearing. However, because Judge Mangerson did not sign the subpoena at issue and no probable cause affidavit was provided to him, Judge Mangerson could not make a finding of probable cause or correct the record as to why the subpoena was issued. There is nothing in the record to indicate that the criminal process was utilized.

## I. SUBPOENA POWER IN WISCONSIN

¶ 137. In short, the State had no authority to obtain the documents by using purely a civil subpoena process in a criminal investigation. When a court realizes that it issued a subpoena without any authority, it can and should quash the subpoena under its own authority in the administration of justice.[2] So long as there is no bad faith, the court may then require the State to use the correct process to obtain the records by subpoena. From this record, there is no bad faith by any person. The State made mistakes in obtaining the subpoena, and the court made mistakes in signing the subpoena under the wrong authority and without a probable cause affidavit.

¶ 138. The State utilized a civil subpoena statute, Wis. Stat. § 805.07, to subpoena the defendant's bank records. Nowhere in the subpoena does the State cite the criminal statute. The State may not circumvent the criminal process by using civil subpoena statutes.[3] The criminal law has its own subpoena statutes, which the State was required to use.

---

[2] Although inherent authority was not utilized by the circuit court in this case, we should remand with directions that the circuit court consider utilizing its inherent authority.

[3] Perhaps the argument in favor of allowing the State to use civil subpoena statutes arises out of Wis. Stat. § 972.11(1), which makes the rules of civil actions applicable to all criminal proceedings. However, this is impermissible when the "context of a section or rule manifestly requires a different construction." Wis. Stat. § 972.11(1). A different construction is required in this case. The criminal law has its own subpoena statutes, and therefore, it does not need to rely on, nor should it rely on, civil subpoena statutes. *See* Wis. Stat. § 972.11(1) (stating chapter 885 shall apply to criminal proceedings); Wis. Stat. § 885.01 (providing subpoena power); Wis. Stat. § 968.135 (providing criminal investigative subpoena power).

¶ 139. The Wisconsin criminal code specifically provides that chapter 885, Witnesses and Oral Testimony, "shall apply in all criminal proceedings." Wis. Stat. § 972.11(1). As a result, any attorney, including the district attorney, may secure a witness to testify at a hearing. Wis. Stat. § 885.01.[4] By virtue of Wis. Stat. §§ 885.01 and .02, an attorney, including a district attorney, may require a witness to bring documents with him or her to a scheduled hearing.

---

[4] Section 24.11 of Wisconsin *Criminal Practice and Procedure* states in relevant part:

> The "subpoena power" is the authority to require "the attendance of any witness, residing or being in any part of this state, to testify in any matter or cause pending or triable...." Compelling a witness to appear in a Wisconsin court may be accomplished by any attorney practicing before that court. This situation exists because W.S.A. 757.01(1)2 bestows subpoena power on all state courts of record, and W.S.A. 885.01(1)3 permits issuance of subpoenas by "any judge or clerk of a court or court commissioner or municipal judge" within that officer's or the appropriate court's jurisdiction. W.S.A. 757.355 then provides that the clerk of any court of record may deliver blank, pre-signed and sealed process forms to any attorney practicing before that court. Upon completion by the attorney, these documents have the same force as they would if they were perfected by the clerk. Utilizing this procedure, attorneys practicing in Wisconsin have subpoena power.
>
> The Wisconsin attorney general and district attorneys, or persons acting in their stead, may also statutorily sign and issue subpoenas to compel the appearance of witnesses in any court or before any magistrate, from any part of the state, on behalf of the state. Similarly, under the Children's Code, a juvenile who is alleged to have performed a delinquent act must be informed by the intake worker that the juvenile has a "right to present and subpoena witnesses."

9 Christine M. Wiseman, Nicholas L. Chiarkas, & Daniel D. Blinka, *Criminal Practice and Procedure* § 24.11 (1996) (internal footnotes omitted).

¶ 140. The district attorney possesses additional subpoena power by virtue of Wis. Stat. § 968.135.[5] This subpoena power is meant to enhance the investigative powers of law enforcement. It can be used before a crime is even charged and no scheduled hearing is required. However, because § 968.135 bestows upon the State great power, certain safeguards apply such as a court finding probable cause, documents being returned to the court, and providing the circuit court the power to completely quash or limit the subpoena.

¶ 141. The State, in this case, should have used Wis. Stat. § 968.135 rather than Wis. Stat. § 805.07—a civil subpoena statute meant for civil litigants.[6] Because the State should have used Wis. Stat. § 968.135, the majority looks to that statute for a remedy. However, the record does not support that § 968.135 was ever used. This was not a mere scriveners' error or malfunctioning tape recorder; this was a subpoena, which at every juncture of the entire process, was defective.

## II. DEFECTIVE SUBPOENA

¶ 142. The State's subpoena was fatally defective. Absolutely nothing was done correctly with respect to this subpoena. The district attorney had no authority to request it, and the judge should not have signed it. If there is a remedy for this unusual statutory violation, it lies in the court's inherent authority to administer justice since the legislature did not provide for suppression as a remedy in the statute and the violation did not

---

[5] *See* 9 Wiseman et al., *supra,* § 24.16.

[6] *See* 9 Wiseman et al., *supra,* § 24.11, n.6 (stating that "[i]n civil cases, attorneys have subpoena power under Wis. Stat. § 805.07").

invoke constitutional protections. The proper remedy in a case like this, where no bad faith exists, is to permit the judge—when the error is discovered—to quash the subpoena and require the State to subsequently seek the documents through a properly enforced subpoena. In finding that Wis. Stat. § 968.135 calls for suppression of the documents—and ultimately the statements—the majority weaves a remedy that unravels years of precedent.[7]

¶ 143. A circuit court judge has the authority to quash a subpoena that is defective.[8] In this case, the defective subpoena was in part due to the circuit court's own errors. It is nonsensical to not allow a circuit court

---

[7] *See* Justice Roggensack's dissent, ¶ 165.

[8] *See City of Sun Prairie v. Davis,* 226 Wis. 2d 738, 749–50, 595 N.W.2d 635 (1999) (citing to a number of cases and stating "the court exercises inherent authority i[n] ensuring that the court functions efficiently and effectively to provide the fair administration of justice"); *State v. Holmes,* 106 Wis. 2d 31, 44, 315 N.W.2d 703 (1982) (discussing inherent powers, which are "those powers which must necessarily be used by the various departments of government in order that they may efficiently perform the functions imposed upon them by the people"). *See, e.g., Marth v. Hevier,* No. 81–1639, unpublished slip op. at 2 (Wis. Ct. App. Nov. 10, 1982) (as an example of the trial court quashing a subpoena issued under Wis. Stat. § 805.07 because it was defective as to form since it was directed to a corporation rather than an individual); *In re Grand Jury Proceedings of June 16, 1981,* 519 F. Supp. 791, 795 (E.D. Wis. 1981) (exercising the "inherent powers th[e] court possesses to supervise the grand jury and quash th[e] subpoena"); *People v. Hart,* 552 N.E.2d 1, 4 (Ill. App. Ct. 1990) (allowing the trial court to quash a subpoena that was defective because it allowed documents to be returned directly to the district attorney rather than through the court); *James v. Booz-Allen & Hamilton, Inc.,* 206 F.R.D. 15, 18 (D.D.C. 2002) (allowing trial court to quash service of process because the defendant served the wrong person).

judge to remedy such a procedural error. It is unnecessary to undertake the majority's analysis. In this case, the subpoena was fatally defective in a number of ways. The State may never utilize civil subpoena statutes for a criminal investigation. Probable cause is always required when utilizing criminal investigative subpoenas. There is a procedure for which evidence is returned to the circuit court. It is logical that a circuit court should be able to use inherent authority to right such a wrong and require the State to obtain the documents through the proper means. Once the subpoena is quashed, and if no bad faith exists, the State may seek the same documents through a proper subpoena.

¶ 144. The majority eliminates longstanding precedent that suppression is required only if the statute specifically provides for suppression. Majority op., ¶¶ 57–71. The majority questions whether any justification exists for such a rule. Majority op., ¶ 70. We, however, need not look any further than well respected and accepted principles of statutory construction and interpretation for justification. When the legislature intends to provide suppression for a statutory remedy, it specifically does so,[9] and if it does not, this court should not insert words into the statute.[10] Rather, when no

---

[9] *See, e.g.,* Wis. Stat. § 968.30(9)(a). It provides in part:

> Any aggrieved person . . . may move before the trial court or the court granting the original warrant to suppress the contents of any intercepted wire, electronic or oral communication . . . .

[10] *See State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 39, 271 Wis. 2d 633, 681 N.W.2d 110 (citing to the United States Supreme Court, *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992), asserting that "[w]e have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there"); 2A Norman J. Singer & J.D. Shambie

suppression remedy exists in the statute, a statutory violation—and thus most likely a procedural violation—should be corrected by ordering the violator to repeat the process or procedure in a manner that complies with the statute. Suppression is appropriate for constitutional violations, which by their very nature are serious violations, and suppression is appropriate when the legislature deems a statutory violation so significant that permanent exclusion is appropriate.

¶ 145. Here, the majority is making new law. No case has ever suppressed evidence without specific statutory authority unless there has been a constitutional violation. With this new basis for suppression, is there any stopping point? Is anything attenuated? If something is suppressed in a case, does that now mean that anything obtained thereafter is suppressed? If not, why not? What is the standard? For example, if law enforcement obtains a lead in an investigation and that evidence is later found to be inadmissible, is all evidence obtained thereafter suppressed because officers built a case based upon various leads? Is law enforcement now required to obtain an independent basis for

Singer, *Statutes and Statutory Construction* (7th ed. 2007) (§ 46.3, "Expressed intent," stating "[w]hat a legislature says in the text of a statute is considered the best evidence of the legislative intent or will"; § 46.6, "Each word given effect," stating "it is also the case that every word excluded from a statute must be presumed to have been excluded for a purpose"; § 47.23, "Expressio unius est exclusio alterius," stating "where a form of conduct, . . . there is an inference that all omissions should be understood as exclusions"; § 47.38, "Insertion of words," stating "[i]n construing a statute, it is always safer not to add to or subtract from the language of a statute unless imperatively required to make it a rational statute") (internal footnotes omitted).

the admission of each piece of evidence for fear that something earlier may be suppressed?

¶ 146. In order to suppress the documents, the majority decides that suppression is allowed under Wis. Stat. § 968.135. However, § 968.135 was never utilized by the State to subpoena the documents or by the court that issued the subpoena. From the record, the State and the court relied solely on the civil statute and procedure to subpoena the documents—Wis. Stat. § 805.07. Instead of deciding the case on the basis that there exists no authority to so subpoena the documents civilly, the majority contorts this into a criminal subpoena. It is not. The subpoena was fatally defective.

## III. FRUIT OF THE POISONOUS TREE DOCTRINE

¶ 147. The majority takes the extra step of suppressing the statements that were obtained when the defendant was subsequently shown the bank documents. While the majority frames its analysis under the auspices of statutory authority, it really does so by an unprecedented application of the fruit of the poisonous tree doctrine. In so doing, the majority undermines longstanding case law. There is no legal support for the proposition that the court can suppress the statements as fruit of the poisonous tree or, as the majority has now done, under the language of the statute. The statute at issue does not list suppression as a remedy and the fruit of the poisonous tree doctrine has never been extended to a statutory violation. Unlike using its inherent authority in the administration of justice to quash the improperly issued subpoena, the court's inherent authority does not extend to suppressing the attenuated statements, especially where there is no bad faith. In

order to suppress the statements there must be authority in the statute or in constitutional law. No such authority exists here.

¶ 148. We have no reason to believe that law enforcement acted in bad faith to obtain the documents. There is no reason to believe that law enforcement used the documents in bad faith. The majority suppresses the statements by finding that there was a statutory violation in obtaining the documents in the first instance; it then suppresses the "fruit" of the "poisonous tree"—the statements derived from the use of those documents.

¶ 149. The fruit of the poisonous tree doctrine has never been applied to suppress statements elicited by virtue of a defendant being shown documents obtained from a faulty civil subpoena. This doctrine applies to constitutional violations, and no constitutional violation has occurred in this case.

> It is true that evidence obtained as a direct result of a violation of a constitutional right is inadmissible and the exclusionary rule applies to intangible evidence as well as tangible evidence, such as statements following an unlawful arrest or entry. Not only evidence obtained by the primary illegality is inadmissible but also derivative evidence if such evidence is obtained 'by exploitation of that illegality.'

*State v. Schneidewind,* 47 Wis. 2d 110, 118, 176 N.W.2d 303 (1970).[11] However, if the majority were to find a

[11] *See also State v. Yang,* 2000 WI App 63, ¶ 20, 233 Wis. 2d 545, 608 N.W.2d 703 (stating that United States Supreme Court, "[i]n *Elstad,* the Court examined the fruit of the poisonous tree doctrine and determined that it only applies to a constitutional violation"); *State v. Noble,* 2002 WI 64, ¶¶ 7, 13, 29–31, 253 Wis. 2d 206, 646 N.W.2d 38; *but see Muetze v. State,* 73 Wis. 2d

constitutional violation, our existing body of case law would be blurred beyond recognition.

¶ 150. Suppression of derivative evidence does not occur every time a procedural mishap occurs with the subpoena process. In this case, there is no showing of bad faith on the part of law enforcement. The majority fails to provide any direction to our circuit courts, district attorneys, defense lawyers, and law enforcement with regard to when a circuit court judge must "suppress" derivative evidence or when it simply can quash a subpoena that was issued without authority and order compliance with the statute at issue. Surely not all procedural violations demand such drastic measures as the court prescribes in this case.

## IV. CONCLUSION

¶ 151. The majority, instead of directly deciding the issue at hand, proceeds down a path of "correcting" law that does not need correction. At the fault of both the State and the circuit court, a fatally defective subpoena was issued. The State had no authority to use the subpoena, and the court had no authority to issue the requested subpoena. This case does not call upon us to decide whether our current case law needs any clarification or changing with regard to when suppression is permitted. Because of the majority's decision, the law has been contorted to fit an outcome. Longstanding precedent is called into question. Courts and law enforcement are left with uncertainty.

---

117, 134–35, 243 N.W.2d 393 (1976) (applying the fruit of the poisonous tree doctrine to a statutory privilege violation that led to obtaining a search warrant without probable cause once the privileged information was excluded). *Muetze,* however, is distinguishable from the case at hand because the statutory violation here did not directly lead to a constitutional violation.

¶ 152. The proper remedy in a case such as this is to permit the judge—when the error is discovered—to quash the subpoena and require the State to subsequently seek the documents through a properly enforced subpoena. The State should be able to reissue the subpoena and obtain the documents lawfully, but the fruit of the poisonous tree doctrine should not be applied under the guise of statutory interpretation in order to suppress the statements. In giving proper respect to precedent, there is no other authority upon which the documents can be suppressed. There is no authority to suppress the statements.

¶ 153. While the circuit court did not invoke its inherent authority in the case at hand because it had improperly suppressed based upon a constitutional expectation of privacy in bank records, we should remand to the circuit court with instructions that no such expectation of privacy exists[12] and the proper remedy can be found under its inherent authority as articulated throughout this opinion.

¶ 154. For the foregoing reasons, I concur in part and dissent in part.

155. PATIENCE DRAKE ROGGENSACK, J. (*dissenting*). We are asked to review a court of appeals decision reversing the circuit court's order (1) suppressing bank records that were subpoenaed and produced without a finding of probable cause, which Wis. Stat. § 968.135 (2005–06)[1] requires, and (2) suppressing Michelle Popenhagen's subsequent incriminating statements.

---

[12] *United States v. Miller,* 425 U.S. 435 (1976); *State v. Swift,* 173 Wis. 2d 870, 496 N.W.2d 713 (Ct. App. 1993).

[1] All further references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

¶ 156. I dissent from the majority opinion because I conclude that controlling precedent, as established more than 20 years ago by the appellate courts of this state, precludes suppressing Popenhagen's bank records and her subsequent incriminating statements. I reach this conclusion because: (1) Wis. Stat. § 968.135 does not authorize the suppression of Popenhagen's bank records as a remedy for the circuit court's failure to find probable cause that the bank records were linked to the commission of a crime; and (2) Popenhagen has no privacy right in her bank records under either the Fourth Amendment of the United States Constitution or Article I, Section 11 of the Wisconsin Constitution. Accordingly, I would affirm the court of appeals decision that overturned the circuit court's suppression of evidence, and I respectfully dissent from the majority opinion that upholds suppression of Popenhagen's bank records and her subsequent incriminating statements.

## I. BACKGROUND

¶ 157. While Popenhagen was an employee of Save-More Foods in Minocqua, the owner, Brian Krueger, suspected that she was stealing from the store. Krueger reported to the Minocqua Police Department that Popenhagen cashed checks at the store that she drew on accounts containing insufficient funds. Krueger also alleged that Popenhagen had stolen money from the store's automated teller machine. According to the criminal complaint and the attached police reports, it is alleged that Popenhagen stole approximately $29,000 from her employer.

¶ 158. To further their investigation of the matter, the Minocqua Police sought to obtain Popenhagen's bank records through criminal subpoenas under Wis.

Stat. § 968.135. To that end, in compliance with
§ 968.135, a police officer completed an affidavit show-
ing probable cause that the records sought were linked
to the commission of a crime. However, when the
requests for the subpoenas were made, the affidavit
showing probable cause apparently was not presented
to the two judges who issued the subpoenas.[2]

¶ 159. All three banks complied with the subpoe-
nas by delivering Popenhagen's bank statements, deposit
slips and cancelled checks to the Oneida Police Depart-
ment. Oneida police officers then interviewed Popen-
hagen. She initially denied that she had stolen money
from Save-More, but after the police confronted Popen-
hagen with her bank records, which revealed that her
deposit amounts closely corresponded to amounts miss-
ing from Save-More, she made several incriminating
statements.[3]

¶ 160. Popenhagen was charged with theft of more
than $10,000, contrary to Wis. Stat. § 943.20(1)(b) and
(3)(c). In a pretrial motion, she moved to suppress both
her bank records and her incriminating statements. The
circuit court granted her motion to suppress, ruling that

[2] Circuit court Judges Robert Kinney and Mark Mangerson
of Oneida County signed the subpoenas directed to three banks
where Popenhagen held accounts.

[3] There is no transcript in the record of precisely what
Popenhagen said; her statements are recounted in summary
fashion in the September 19, 2004 police report prepared by
Officer Todd G. Hanson and provided in the record. Officer
Hanson states in that report that, upon being confronted with
her bank records, Popenhagen explained that "she didn't know
why she did this" and that "she always thought she might get
caught." According to Officer Hanson's report, Popenhagen
further stated that "she used some of the money to pay the
mortgage and to pay on some judgments against her."

the State obtained her bank records in violation of Popenhagen's federal and state constitutional right of privacy and in violation of Wis. Stat. § 968.135.

¶ 161. The State appealed the circuit court's decision, and in a two-to-one decision, the court of appeals reversed. The majority concluded that neither the Fourth Amendment of the United States Constitution nor Article I, Section 11 of the Wisconsin Constitution accorded Popenhagen a right of privacy in her bank records; and therefore, it was error to suppress them. In addition, although the issuance of subpoenas without a finding of probable cause conflicts with the provisions of Wis. Stat. § 968.135, the court of appeals ruled that suppression was not proper because § 968.135 does not authorize suppression as a remedy, as Wisconsin precedent requires.

¶ 162. On review before this court, Popenhagen advances four arguments to support her assertion that her bank records and her incriminating statements must be suppressed. First, Popenhagen argues that because Wis. Stat. § 968.135 requires a finding of probable cause before a subpoena is issued thereunder, she has a statutory "expectation of privacy" in her bank records which was violated when these subpoenas were issued. Second, Popenhagen contends that the issuance of the subpoenas without a finding of probable cause is a misuse of process that necessitates suppressing her bank records and incriminating statements. Third, she contends that she has a Fourth Amendment right of privacy in her bank records because the holding of *United States v. Miller*, 425 U.S. 435 (1976), is no longer good law. Fourth, she encourages this court to interpret Article I, Section 11 of the Wisconsin Constitution independently of Fourth Amendment interpretations, and to hold that there is a constitutional right of privacy in bank records under the

Wisconsin Constitution. The majority opinion reverses the court of appeals and upholds the suppression of evidence based on Popenhagen's first contention.[4]

## II. DISCUSSION

### A. Standard of Review

¶ 163. Resolution of this case requires the court to interpret Wis. Stat. § 968.135, as well as the federal and state constitutions. We independently review questions of statutory interpretation. *State v. Fisher*, 2006 WI 44, ¶ 4, 290 Wis. 2d 121, 714 N.W.2d 495. We also review independently questions of constitutional interpretation. *Schilling v. Crime Victims Rights Bd.*, 2005 WI 17, ¶ 12, 278 Wis. 2d 216, 692 N.W.2d 623. Whether to grant a motion to suppress evidence is a discretionary determination of the circuit court. *State v. Keith*, 216 Wis. 2d 61, 68, 573 N.W.2d 888 (Ct. App. 1997). Therefore, we will overturn an evidentiary decision of the circuit court only if that court erroneously exercised its discretion. *Id.* at 69.

### B. Wisconsin Stat. § 968.135

#### 1. Suppression precedent

¶ 164. Judges formulated the discretionary remedy of suppression to deter unreasonable or bad-faith police conduct that resulted in the violation of a defendant's constitutional rights. *Stone v. Powell*, 428 U.S. 465, 482 (1976). Suppression is not automatically accorded as a remedy, even when a constitutional right has been impaired; rather, suppression of evidence is

---

[4] Majority op., ¶¶ 4–5.

weighed against "depriving the court or jury of relevant evidence, endangering society, and allowing the guilty to go free." *State v. Verkuylen,* 120 Wis. 2d 59, 60–61, 352 N.W.2d 668 (Ct. App. 1984).

¶ 165. The majority opinion concludes that Popenhagen is entitled to suppression of the bank records and her subsequent incriminating statements under Wis. Stat. § 968.135, even though there was no unreasonable or bad-faith police conduct and even though § 968.135 does not expressly authorize the remedy of suppression when a subpoena was issued without a finding of probable cause.[5] In so concluding, the majority opinion effects an enormous change in the law of the state of Wisconsin that expands the rights of criminal defendants at the expense of effective prosecutions. It does so by overruling more than 20 years of precedent of this court and of the court of appeals.[6] This is so because for more than 20 years, suppression could be considered as a remedy *only when* a constitutional right was violated or a statute specifically authorized suppression as a remedy for the statutory violation. *See, e.g., State v. Noble,* 2002 WI 64, ¶ 13, 253 Wis. 2d 206, 646 N.W.2d 38 (concluding that suppression of Noble's testimony was not required because the violation "during the John Doe proceeding did not amount to either a constitutional violation or a statutory violation for

---

[5] *Id.,* ¶ 71.

[6] Majority op., ¶¶ 58–71. In addition, Popenhagen did not request the sweeping change in the law that the majority opinion effects. Nevertheless, the majority opinion uses this case as a vehicle to effect an enormous expansion of the rights of defendants in criminal cases at the expense of victims of crimes, where the failure to follow a statute was simply an error of law by a circuit court judge and no police misconduct is alleged to have occurred.

which suppression is provided as a remedy"); *State v. Raflik,* 2001 WI 129, ¶ 15, 248 Wis. 2d 593, 636 N.W.2d 690 (concluding that "[s]uppression is only required when evidence has been obtained in violation of a defendant's constitutional rights . . . or if a statute specifically provides for the suppression remedy"); *State v. Cash,* 2004 WI App 63, ¶ 30, 271 Wis. 2d 451, 677 N.W.2d 709 (concluding that "[W]rongfully or illegally obtained evidence is to be suppressed only where the evidence was obtained in violation of an individual's constitutional rights *or in violation of a statute that expressly requires suppression as a sanction*") (emphasis in *Cash*); *State v. Repenshek,* 2004 WI App 229, ¶ 24, 277 Wis. 2d 780, 691 N.W.2d 369 (concluding that if suppression is to be available for a statutory violation, "the remedy sought for [a] statutory violation [must] be expressed in the relevant statute"); *State v. Keith,* 2003 WI App 47, ¶ 8, 260 Wis. 2d 592, 659 N.W.2d 403 (concluding that "[s]uppression of evidence is only required when evidence has been obtained in violation of a defendant's constitutional rights, or if a statute specifically provides for the suppression remedy"); *State v. Jackowski,* 2001 WI App 187, ¶ 17, 247 Wis. 2d 430, 633 N.W.2d 649 (concluding that "the exclusionary rule is applicable in civil and criminal proceedings only where the evidence sought to be excluded was obtained in violation of a constitutional right or a statute that specifically requires suppression of wrongfully or illegally obtained evidence as a sanction"); *State ex rel. Peckham v. Krenke,* 229 Wis. 2d 778, 787, 601 N.W.2d 287 (Ct. App. 1999) (concluding that "wrongfully or illegally obtained evidence is to be suppressed only where the evidence was obtained in violation of an individual's constitutional rights or in violation of a statute that expressly requires suppression as a sanction");

677

*Verkuylen,* 120 Wis. 2d at 61 (concluding that "[s]uppression is therefore required only upon a showing that evidence was obtained in violation of a constitutional right . . . or when a statute specifically requires suppression of illegally obtained evidence").

¶ 166. *State ex rel. Arnold v. County Court of Rock County,* 51 Wis. 2d 434, 187 N.W.2d 354 (1971), has been cited repeatedly for the proposition that evidence obtained as a result of a statutory violation may be suppressed, but only if the statute specifically authorizes suppression as a remedy. *See, e.g., Raflik,* 248 Wis. 2d 593, ¶ 15; *Verkuylen,* 120 Wis. 2d at 61; *State v. King,* 142 Wis. 2d 207, 214 n.3, 418 N.W.2d 11 (Ct. App. 1987).[7] The majority opinion concludes that *Raflik* and *Verkuylen* were in error in citing *Arnold* for that proposition.[8] However, as I will explain below, it is the majority opinion that is mistaken. The majority recasts the *Arnold* opinion to provide support for suppression of evidence, when Arnold has correctly been cited to preclude suppression. The courts in *Raflik* and in *Verkuylen did not misconstrue Arnold,* nor has any other court in more than 20 years.

¶ 167. *Arnold* arose under the Electronic Surveillance Control Law, Wis. Stat. § 968.27–.33, as an original action before this court. *Arnold,* 51 Wis. 2d at 435. The question presented was whether the Electronic Surveillance Control Law precluded the admission of four tape recordings as evidence in Arnold's trial. *Id.*

---

[7] *State ex rel. Arnold v. County Court of Rock County,* 51 Wis. 2d 434, 187 N.W.2d 354 (1971) has also been cited by unpublished opinions for the same proposition. *See, e.g., State v. Harris,* No. 83–143–CR, unpublished slip op., 1983 WL 161359 at *1 (Wis. Ct. App. Oct. 4, 1983).

[8] Majority op., ¶¶ 58, 63, 67.

¶ 168. Essential to a full understanding of *Arnold* is recognition that the trial court had denied Arnold's pretrial motion to suppress the tape recordings. *Id.* at 436. In denying his motion, the trial court explained, "it is not unlawful to intercept a wire or oral communication where a person is a party to the communication or where one of the parties to the communication has given prior consent." If the wiretap had been "unlawful," Arnold apparently would have prevailed on his motion to suppress because Wis. Stat. § 968.30(9)(a) provides that "[a]ny aggrieved person ... may move before the trial court ... to suppress the contents of any intercepted wire, electronic or oral communication, or evidence derived therefrom, on the grounds that the communication was unlawfully intercepted."[9]

¶ 169. However, as we relayed in *Arnold,* the Electronic Surveillance Control Law also provides that not all evidence that has been lawfully obtained by eavesdropping interceptions can be disclosed after it has been obtained. *Arnold,* 51 Wis. 2d at 442. As we explained, the Electronic Surveillance Control Law has two steps that must be met before the evidence obtained by wiretaps is eligible for admission in court: (1) it must be lawfully obtained; and (2) it must be obtained by a means that also qualifies it for disclosure. *Id.* at 442–43. With regard to the latter, Wis. Stat. § 968.29(3) sets out parameters that must be met when conducting a wiretap before such evidence can be disclosed. *Id.* at 442. When evidence is admitted at trial, obviously it is "disclosed"; and therefore, only wiretap evidence that has been obtained in compliance with the statutory parameters described in

_____

[9] The same substantive provision was in existence in 1971 when *Arnold* was decided, although the form of the statute differed slightly. Wis. Stat. § 968.30(9)(a) (1971–72).

§ 968.29(3) may be admitted at trial. *Id.* As our opinion relates in *State v. Gilmore,* 201 Wis. 2d 820, 549 N.W.2d 401 (1996), "suppression of wire communications under [the Electronic Surveillance Control Law] *is reserved* for those *communications illegally intercepted.* Wis. Stat. § 968.30(9)(a)." *Id.* at 839 (emphasis added).

¶ 170. Even though the evidence at issue in *Arnold* was intercepted without court authorization, it was lawfully obtained because one of the parties to the conversation consented to the interception. *Arnold,* 51 Wis. 2d at 442 (citing Wis. Stat. § 968.31(2)(b)). However, in considering all the relevant portions of the Electronic Surveillance Control Law, we concluded that "[i]nterception is one thing; disclosure as evidence in court is another." *Id.* We concluded that only evidence that is obtained after authorization by a court order can be disclosed; and therefore, it is only that evidence that may be admitted in court. *Id.* at 443.

¶ 171. Because the evidence at issue in *Arnold* had been *lawfully obtained,* it was not appropriate to analyze whether the evidence should have been suppressed, as the trial court concluded in ruling on Arnold's motion to suppress the intercepted communications. Instead, because the evidence in *Arnold* was lawfully obtained, thereby foreclosing Arnold from having the evidence suppressed, the relevant question was whether the evidence could be disclosed. We ruled that the evidence could not be disclosed. *Id.* at 444.

¶ 172. Therefore, the majority opinion is revising history when it says that "in *Arnold*, the government did not comply with the statutory requirements to obtain the evidence in question."[10] As the trial court

---

[10] Majority op., ¶ 61.

found when denying Arnold's suppression motion, *law enforcement did comply* with the statute in obtaining the evidence.

¶ 173. Consequently, *Raflik* correctly cited *Arnold* for the proposition that suppression is an available remedy for a statutory violation *only if* the statute so provides, as Wis. Stat. § 968.30(9)(a) does when the evidence was not lawfully obtained.

¶ 174. The majority opinion errs in its use of *Arnold. Arnold* does not support the majority opinion's assertion that "*Arnold,* correctly read, stands for the proposition that evidence obtained in violation of a statute (or not in accordance with the statute) may be suppressed under the statute to achieve the objectives of the statute, even though the statute does not expressly provide for the suppression or exclusion of the evidence."[11] The majority opinion ignores the factual history of *Arnold*. As I explained above, Arnold's motion to suppress was denied because *the evidence was not obtained in violation of the law;* rather, the evidence was obtained in accordance with the statute that regulates the lawful means to obtain wiretap evidence. Therefore, there was no statutory violation in obtaining the evidence. The evidence simply did not meet a second statutory requirement, that relating to disclosure. Of course, disclosure would have occurred if the evidence had been admitted at trial. *Arnold,* 51 Wis. 2d at 444.

¶ 175. Therefore, in order for the decision in this case to be consistent with 20 years of prior precedent, including *Arnold,* Wis. Stat. § 968.135 must expressly authorize suppression of evidence obtained without a finding of probable cause. *Raflik,* 248 Wis. 2d 593, ¶ 15.

---

[11] *Id.,* ¶ 62.

Section 968.135 does not authorize suppression; accordingly, the majority errs by allowing suppression for this statutory violation. *See id.*

¶ 176. The majority opinion affirms the suppression of two types of evidence: the bank records and Popenhagen's incriminating statements. I begin with a discussion of the bank records.

2. Bank records

¶ 177. In deciding to exclude Popenhagen's bank records, the circuit court reasoned:

> But it is clear to me that there is now a Federally–and Wisconsin–recognized right to privacy in one's personal banking records. And I'm convinced that, obtaining those records over which there is an umbrella of privacy by violating 968.135 of the statutes, should result in suppression.

We will not disturb an evidentiary ruling that suppresses evidence if the record shows that the circuit court, in making its ruling, exercised its discretion in accord with the correct legal standards and the facts of record. *State v. Clark,* 179 Wis. 2d 484, 490, 507 N.W.2d 172 (Ct. App. 1993). The concern here is whether the circuit court applied the correct legal standard.

¶ 178. Furthermore, courts do not necessarily suppress evidence that is obtained in violation of a statute that provides for suppression as a remedy. *State v. House,* 2007 WI 79, ¶ 38, 302 Wis. 2d 1, 734 N.W.2d 140 (concluding that even though Wis. Stat. § 968.30(9)(a) specifically authorizes suppression as a remedy for violating the Electronic Surveillance Control Law, whether a violation "requires suppression depends upon whether the statutory purpose has been achieved despite the violation"); Arthur Best, *Wigmore on Evidence* § 2183a

(2007–2 Cumulative Supp. 2008) (concluding that not all illegally obtained evidence should be suppressed). Therefore, whether the circuit court erroneously exercised its discretion in suppressing Popenhagen's bank records initially turns on whether a Wisconsin appellate decision or some provision of Wis. Stat. § 968.135 specifically authorizes suppression; and if so, whether the circuit court gave a reasoned explanation for its decision. *Clark,* 179 Wis. 2d at 490.

¶ 179. The first part of the resolution of this question rests with the interpretation of Wis. Stat. § 968.135. Statutory interpretation commences with the language of the statute, as it is our obligation to determine what the legislature meant by the statute it enacted. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We assume that the legislative meaning is expressed in the words chosen. *Id.,* ¶ 44. The context in which the operative language appears is important too because a statute's meaning may be affected by the context in which the words chosen by the legislature are used. *Id.,* ¶ 46. If our focus on the statute's language yields a plain, clear meaning, then there is no ambiguity, and the statute is applied according to its plain terms. *Id.* If the statutory language is unambiguous, it is unnecessary to consult extrinsic sources to facilitate interpretation. *Id.*

¶ 180. Wisconsin Stat. § 968.135 provides:

> Subpoena for documents. Upon the request of the attorney general or a district attorney and upon a showing of probable cause under s. 968.12, a court shall issue a subpoena requiring the production of documents, as specified in s. 968.13(2). The documents shall be returnable to the court which issued the subpoena. Motions to the court, including, but not limited to,

683

motions to quash or limit the subpoena, shall, be addressed to the court which issued the subpoena. Any person who unlawfully refuses to produce the documents may be compelled to do so as provided in ch. 785. This section does not limit or affect any other subpoena authority provided by law.

¶ 181. Wisconsin Stat. § 968.135 plainly provides for review of subpoenas to produce documents issued under its authority. It is silent in regard to verbal statements. Accordingly, the statute does not regulate the production of verbal statements.

¶ 182. The statute specifies two particular types of motions: to "quash"[12] and to "limit." It also includes the phrase, "including, but not limited to," which unambiguously directs that motions to quash or to limit do not constitute the universe of motions that are appropriately brought under Wis. Stat. § 968.135. However, that same phrase creates an ambiguity about what those unspecified motions may be.[13]

¶ 183. Both specified motions under Wis. Stat. § 968.135 appear to mean that the target of the subpoena's obligation to provide the documents requested may be reduced, prior to their production. For example, a motion to "quash," if granted, will remove

_____

[12] Ordinarily, motions to quash must be made before the time specified in the subpoena for compliance. *See, e.g.,* Fed. R. Civ. P. 45; *see also,* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2458 (3d ed. 2008).

[13] Because the statute is ambiguous, I may turn to "interpretive resources outside the statutory text" for guidance. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 50, 271 Wis. 2d 633, 681 N.W.2d 110. It is customary to consult legislative history first. However, the legislative history of Wis. Stat. § 968.135 is sparse and of no avail in interpreting the statute.

the obligation of the target of the subpoena to provide the documents sought. A motion to "limit" may narrow the scope of the subpoena and thereby limit the target's obligation to produce some, but not all, of the documents.

¶ 184. Furthermore, Wis. Stat. § 968.135 is silent in regard to what should occur if records outside the scope of the subpoena are produced, if privileged documents are produced or if the subpoena itself is defective, as the circuit court found here. *State v. Swift,* 173 Wis. 2d 870, 885–86, 496 N.W.2d 713 (Ct. App. 1993). Instead, the statute permits pre-compliance challenges to the subpoena. At least one authority has instructed that "if the target [here, the banks] misinterprets the demands of the subpoena and produces more than what is sought, the state is free to inspect the additional documents." 9 Christine M. Wiseman et al., *Wisconsin Practice* § 24.16 (1996).

¶ 185. The majority opinion observes the two statutory examples of motions that may be brought under Wis. Stat. § 968.135 and then presents a lengthy discourse on the doctrine of *ejusdem generis.*[14] Thereafter, it concludes, in one sentence, that the circuit court properly granted Popenhagen's motion to suppress the use of her bank records in the State's theft case against her.[15]

---

[14] Majority op., ¶¶ 46–55.

[15] *Id.,* ¶ 56. The majority opinion does not bother to balance the rights of the victim from whom $29,000 was stolen with the right it claims Popenhagen has under Wis. Stat. § 968.135. It does not bother to note that the parties agree there was probable cause for the issuance of the subpoena and that law enforcement had made an affidavit in that regard before the subpoena was issued, but that through inadvertence, it was not presented to the judge. Instead, it automati-

¶ 186. In my view, the majority opinion errs in its statutory construction for at least two reasons: (1) it overlooks the language chosen by the legislature in other laws that have authorized precluding the use of improperly obtained evidence at trial; and (2) it misperceives the nature of a Wis. Stat. § 968.135 subpoena, which does not authorize either a search or a seizure.

¶ 187. To illustrate the first point, I contrast Wis. Stat. § 968.30(9)(a), the statute at issue in *Arnold*, with Wis. Stat. § 968.135, the statute at issue here. In § 968.30(9)(a), the legislature specifically authorized suppression as an available remedy when wiretap evidence was obtained in violation of the Electronic Surveillance Control Law, as we recognized in *Gilmore*. *Gilmore*, 201 Wis. 2d at 839. Section 968.30(9)(a) shows that the legislature knew how to authorize suppression when it chose to do so. As is apparent, § 968.30(9)(a) specified that an "aggrieved person" may move "to suppress" evidence obtained by unlawful means and also to suppress "evidence derived" from unlawfully obtained evidence. In addition, the temporal focus of § 968.30(9)(a) is on a time period *after* the State has already obtained the evidence. By contrast, the temporal focus of the motions listed in § 968.135 is on a time period *before* the target of the subpoena has complied by producing documents. Stated otherwise, the focus of a § 968.135 motion is on limiting what the target of the subpoena is obligated to provide, *not on the use of the documents after the target of the subpoena has provided them. Swift*, 173 Wis. 2d at 886 (concluding that "[b]ecause the additional bank records were not obtained by

cally suppresses the evidence of Popenhagen's crime. Even when a constitutional right has been violated, suppression does not automatically follow. *See Michigan v. Tucker*, 417 U.S. 433, 446 (1974).

state action violating Swift's constitutional rights, Swift is not entitled to suppression of the additional bank records").

¶ 188. Second, Wis. Stat. § 968.135 does not authorize either a search or a seizure. A § 968.135 subpoena is not the equivalent of a search warrant. A § 968.135 subpoena does not give law enforcement the authority to go into a place and seize things. Rather, a § 968.135 subpoena is a demand for the production of documents that gives the target of the subpoena time to contemplate and to object in court to providing the things sought. *Id.* at 885–86. No person "seized" Popenhagen's bank records. They were produced by the banks, who could have objected to that production. In contrast, an electronic interception, for which the legislature in Wis. Stat. § 968.30(9)(a) has authorized suppression when the interception is unlawful, constitutes a search and seizure under the Fourth Amendment. *See Katz v. United States*, 389 U.S. 347, 352–53 (1967).

¶ 189. Moreover, Wis. Stat. § 968.30(9)(a) is not the only statute in which the legislature meant to place limits on the admission of evidence obtained in violation of a statute. Wisconsin Stat. § 938.31(3)(b) also provides that a juvenile's statement taken "during a custodial interrogation is not admissible in evidence against the juvenile in any court proceeding alleging the juvenile to be delinquent," unless the juvenile's statement is taken in conformance with the statute's provisions. The underlying concern for the interrogation of a juvenile in custody has constitutional roots. The concern is that a juvenile in custody may be compelled to testify against himself; and therefore, certain safeguards are required in order to preserve his right against compelled self-incrimination. *State v. Jerrell*

687

*C.J.*, 2005 WI 105, ¶ 30, 283 Wis. 2d 145, 699 N.W.2d 110. Therefore, in both instances where the legislature specifically has authorized the suppression of evidence because a statutory directive was not followed, the policy underlying the statute is the protection of a constitutional right.

¶ 190. Accordingly, I conclude that when the legislature intended to authorize suppression as a remedy for non-compliance with a statute, it specifically stated that "suppression" was the remedy for that statutory violation. *See State v. Christensen*, 2007 WI App 170, ¶ 17, 304 Wis. 2d 147, 737 N.W.2d 38 (interpreting Wis. Stat. § 968.30(9)(a) as providing suppression for communications improperly intercepted). In addition, in the statutes where the legislature authorized such a remedy, constitutional rights underlie the statutes. Therefore, I conclude that the legislature did not authorize the courts to suppress evidence that is obtained in violation of Wis. Stat. § 968.135.

¶ 191. In sum, because more than 20 years of precedent of the appellate courts of this state have required that the statute specifically authorize suppression as a remedy for a statutory violation before suppression may be employed, and because the legislature has not done so here, I conclude that the circuit court erroneously exercised its discretion when it suppressed Popenhagen's bank records based on the circuit court's failure to find probable cause to issue the subpoena. As I have explained above, the majority opinion's analysis of the issue is not well reasoned; it ignores the procedures that occurred before the trial court in *Arnold* and does not identify any compelling interest that is served by overturning more than 20 years of well established precedent.

### 3. Incriminating statements

¶ 192. Wisconsin Stat. § 968.135 is directed to documents. Verbal statements are not mentioned in the statute. Accordingly, the target of the subpoena has no obligation to produce verbal statements. Therefore, a motion to "quash" and a motion to "limit" brought under the provisions of § 968.135 could not affect a verbal statement. Those motions affect only the scope of the production of documents. However, the majority opinion upholds the circuit court's suppression of Popenhagen's incriminating statements, as well as the suppression of her bank records.[16]

¶ 193. Because Popenhagen's incriminating statements were acquired indirectly as a result of the subpoena for her bank records, Popenhagen's statements constitute "derivative evidence." *State v. Gums,* 69 Wis. 2d 513, 515, 230 N.W.2d 813 (1975). There is no statutory basis for excluding her statements because Wis. Stat. § 968.135, by its unambiguous terms, applies only to "documents." *See Raflik,* 248 Wis. 2d 593, ¶ 15; *see also Swift,* 173 Wis. 2d at 886.

¶ 194. Popenhagen does not argue that this derivative evidence should be suppressed because Wis. Stat. § 968.135 was violated. Rather, she argues that suppression is warranted because bank records are protected under the state and federal constitutions. Therefore, in order to have the authority to suppress Popenhagen's statements, we would be required to engraft the constitutional doctrine, "fruit of the poisonous tree," onto a statutory violation.

¶ 195. The majority opinion does not address Popenhagen's constitutional argument. Instead, it cre-

---

[16] Majority op., ¶ 91.

ates an argument that no party made, and then it decides the issue it created by concluding that Wis. Stat. § 968.135 provides for the suppression of derivative evidence.[17] The majority opinion cites no precedent for its conclusion. Indeed, there is no precedent for such a decision. To the contrary, there is 20 years of precedent against it, which the majority opinion discards without any reasoned discussion of why such a drastic step is necessary.

¶ 196. To amplify the misguided nature of the majority's analysis, it is necessary to provide a brief sketch of the standard application of the exclusionary rule.

¶ 197. The exclusionary rule may operate to suppress derivative evidence, such as Popenhagen's statements, when a constitutional violation has occurred "under certain circumstances, via the fruit of the poisonous tree doctrine, if such evidence is obtained 'by exploitation of . . . illegality.' " *State v. Knapp,* 2005 WI 127, ¶ 24, 285 Wis. 2d 86, 700 N.W.2d 899 (hereinafter referred to as *Knapp II*)[18] (quoting *Wong Sun v. United States,* 371 U.S. 471, 485–88 (1963)). The fruit of the poisonous tree doctrine is designed to " 'deter future unlawful police conduct.' " *Id.,* ¶ 22 (quoting *United States v. Calandra,* 414 U.S. 338, 347 (1974)). It is not employed when there has been no unreasonable and bad-faith police conduct. *Powell,* 428 U.S. at 482; *Knapp II,* 285 Wis. 2d 86, ¶¶ 74–75.

---

[17] *Id.*

[18] *State v. Knapp,* 2005 WI 127, 285 Wis. 2d 86, 700 N.W.2d 899 (hereinafter referred to as *Knapp II*), is a second decision by this court, made after remand from the United States Supreme Court after it issued *United States v. Patane,* 542 U.S. 630 (2004).

¶ 198. In *Knapp II,* we excluded certain evidence based on police misconduct. *Knapp II,* 285 Wis. 2d 86, ¶ 75. Our decision was driven by law enforcement's intentional violation of Knapp's *Miranda* rights. *Id.* However, *Knapp II* stands in stark contrast with this case. First, *Knapp II* is based on a *Miranda* violation, which is a judicially-created doctrine grounded in protecting a criminal defendant's constitutional right to remain silent. Here, as I explain below, no constitutionally related issue is presented, and the majority opinion has referred to no violation of Popenhagen's constitutional rights. Second, while *Knapp II* provides an example of circumstances in which application of the exclusionary rule furthers the policy of deterring deliberate, illegal police conduct, the case before us manifests the absence of any "need for deterrence." *Id.,* ¶ 74 (quoting *State v. Knapp,* 2003 WI 121, ¶ 76 n.15, 265 Wis. 2d 278, 666 N.W.2d 881 (hereinafter referred to as "Knapp I")). Instead, the parties agree that the police officers acted in accordance with the law and in good faith. The error here was the circuit court's inadvertently failing to ask for the affidavit before signing the warrants.

¶ 199. Even when a constitutional right has been affected, suppression of derivative evidence is not automatically accorded. *United States v. Leon,* 468 U.S. 897, 916 (1984). The remedy of suppression of evidence "is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.*

¶ 200. No police misconduct is even alleged to have occurred here. Instead, all agree that an officer involved in the investigation of the theft from Save-More had prepared a probable cause affidavit, but apparently, it did not reach the circuit court. Judge Mangerson expressed surprise and dismay that his

signature was affixed to a subpoena that did not comport with Wisconsin statute. Courts have been loathe to exclude evidence obtained as a result of an error committed by a dispassionate jurist. *See, e.g., Arizona v. Evans,* 514 U.S. 1, 14–16 (1995); *Leon,* 468 U.S. at 916; *United States v. Hickman,* 870 F. Supp. 709 (W.D. Va. 1994). Yet, the majority opinion does so here, and as a result, effective prosecution of Popenhagen for stealing more than $29,000 from her employer will be hampered significantly.

¶ 201. Accordingly, it is an enormous expansion of the rights of a defendant in a criminal case to engraft the fruit of the poisonous tree doctrine onto a statutory violation where no constitutional right was also at issue and no police misconduct caused the violation. However, that is exactly what the majority opinion does.[19] The majority opinion is careful not to use the terminology associated with suppression of derivative evidence that arises from a constitutional violation, "the fruit of the poisonous tree," because it does not address a constitutional violation. However, the majority opinion achieves an end result that heretofore could be accomplished only when a constitutional violation had occurred or a statute specifically authorized suppression of derivative evidence, as Wis. Stat. § 968.30(9)(a) does. By not naming the doctrine that it is actually applying, the majority opinion reminds me of a prior statement of Chief Justice Abrahamson: "Like any illusionist's magical sleight of hand, the majority opinion is mystifying and puzzling, but ultimately not what it appears." *State v. Sykes,* 2005 WI 48, ¶ 48, 279 Wis. 2d 742, 695 N.W.2d 277 (Abrahamson, C.J., dissenting).

---

[19] Majority op., ¶ 81–91.

¶ 202. Moreover, the inadvertent nature of the error committed here disposes of another of Popenhagen's arguments. She contends the lack of a finding of probable cause constitutes an abuse of process that demands suppression of her statements. Popenhagen is incorrect. Judge Mangerson's and Judge Kinney's unintentional errors lead to the conclusion that there is "nothing in the record to suggest that the judges[s] did not abide by [their respective] responsibilities in acting as . . . neutral and detached magistrate[s]." *Noble*, 253 Wis. 2d 206, ¶ 26. Accordingly, there was no abuse of process that would support exclusion of her incriminating statements. *Id.*, ¶¶ 26–27.

¶ 203. Therefore, I conclude that Popenhagen's incriminating statements made to Oneida police officers after she was confronted with her bank records cannot be suppressed under the authority granted in Wis. Stat. § 968.135 because: (1) § 968.135, by its clear, unambiguous terms, applies only to documents; it has no application to verbal statements; (2) the fruit of the poisonous tree doctrine may be applied only to constitutional violations; and (3) no abuse of process occurred.

C. United States Constitution, Fourth Amendment

¶ 204. One of the legal premises upon which the circuit court based its decision to suppress was its conclusion that Popenhagen had a constitutionally protected right of privacy in her bank records. The Fourth Amendment protects persons from unreasonable searches of their "persons, houses, papers, and effects . . . ."[20] U.S. Const. amend. IV. The United States

___

[20] The Fourth Amendment of the United States Constitution provides in full:

Supreme Court held in *Miller* that the Fourth Amendment does not afford a right of privacy in a person's bank records.

¶ 205. *Miller* emphasized that bank records are not the type of "papers" to which the Fourth Amendment refers. *Miller*, 425 U.S. at 440. According to *Miller*, bank records are not "private papers" to which an account holder can assert "ownership" or "possession"; instead, they are business records belonging to the bank. *Id.* Moreover, bank records do not remain in the sole custody of the account holder, but rather reside in the custody of the financial institution. *Id.* at 442. Indeed, the records have been deliberately exposed to the public and "what a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Id.* (quoting *Katz*, 389 U.S. at 351). Furthermore, bank records

> are not confidential communications but [may be] negotiable instruments to be used in commercial transactions. [Records such as] financial statements and deposit slips[] contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business. . . . The depositor takes the risk, in revealing [her] affairs to another, that the information will be conveyed by that person to the Government.

*Id.* at 442–43.

¶ 206. Popenhagen argues that *Miller* is not controlling because the enactment of the Right to Financial

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Privacy Act (Financial Privacy Act), 12 U.S.C. § 3401, et seq., effectively overruled it and, therefore, the Financial Privacy Act entitles citizens to a privacy interest in their bank records. Accordingly, Popenhagen argues that operation of the Financial Privacy Act mandates that her bank records and her inculpatory statements be excluded from evidence. Popenhagen is mistaken.

¶ 207. The Financial Privacy Act was indeed passed in response to *Miller*, but it does not render *Miller* any less robust in the present context. While the Financial Privacy Act prescribes the means by which bank records may be obtained by a "Government authority," it defines Government authority as an "agency or department of the United States, or any officer, employee, or agent thereof." 12 U.S.C. § 3401(3). Therefore, the Financial Privacy Act does not apply to subpoenas issued by a state court. *See id.*; *see also, In re Grand Jury Applications*, 536 N.Y.S.2d 939, 942–43 (N.Y. Sup. Ct. 1988); *Nichols v. Council on Judicial Complaints*, 615 P.2d 280, 282–83 (Okla. 1980).

¶ 208. Moreover, the remedy of suppression is unavailable under the Financial Privacy Act. *See* 12 U.S.C. § 3417; *see also, United States v. Daccarett*, 6 F.3d 37, 52 (2d Cir. 1993); *United States v. Kington*, 801 F.2d 733, 737–38 (5th Cir. 1986), *cert. denied*, 481 U.S. 1014 (1987); *United States v. Frazin*, 780 F.2d 1461, 1466 (9th Cir. 1986), *cert. denied* 479 U.S. 844 (1986). Congress provided for injunctive relief and civil penalties for noncompliance, and those remedies are exclusive. 12 U.S.C. § 3417. In short, the Financial Privacy Act does not undercut the holding of *Miller. Miller* rests on the Fourth Amendment and, as controlling Fourth Amendment precedent, it forecloses suppression of evidence in this case based on the United States Constitution.

## D. Wisconsin Constitution, Article I, Section 11

¶ 209. Popenhagen encourages this court to recognize a right of privacy in bank records under the Wisconsin Constitution. We interpret the Wisconsin Constitution in a manner that "give[s] effect to the intent of the framers and of the people who adopted it." *Schilling*, 278 Wis. 2d 216, ¶ 13 (quoting *State v. Cole*, 2003 WI 112, ¶ 10, 264 Wis. 2d 520, 665 N.W.2d 328). To do so, we examine "the plain meaning of the words in the context used; the constitutional debates and the practices in existence at the time of the writing of the constitution; and the earliest interpretation of the provision by the legislature as manifested in the first law passed following adoption." *Id.*, ¶ 16 (quoting *Wis. Citizens Concerned for Cranes & Doves v. DNR*, 2004 WI 40, ¶ 44, 270 Wis. 2d 318, 677 N.W.2d 612).

¶ 210. The Wisconsin Constitution's search and seizure provision almost identically mirrors its federal Fourth Amendment counterpart.[21] Historically, Wisconsin courts have "give[n] effect to the intent of the framers" of Article I, Section 11 by interpreting it to provide the same protections as the United States Supreme Court has interpreted the Fourth Amendment as providing. *Id.*, ¶ 13 (quoting *Cole*, 264 Wis. 2d 520, ¶ 10); *see, e.g., State v. Malone*, 2004 WI 108, ¶ 15, 274 Wis. 2d 540, 683 N.W.2d 1 (concluding that the interpretation of Article I, Section 11 is consistent with the

---

[21] Article I, Section 11 of the Wisconsin Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

United States Supreme Court's jurisprudence construing the Fourth Amendment); *State v. Guzman*, 166 Wis. 2d 577, 586–87, 480 N.W.2d 446 (1992) (explaining that "we have consistently and routinely conformed the law of search and seizure under the Wisconsin Constitution to the law developed by the United States Supreme Court under the Fourth Amendment"); *State v. Guy*, 172 Wis. 2d 86, 93, 492 N.W.2d 311 (1992) (conforming "Wisconsin's law of search and seizure to the law of search and seizure developed by the Supreme Court—in part because the text . . . is identical in all important respects").

¶ 211. However, under our authority to interpret the Wisconsin Constitution independently from the United States Constitution, we have not always marched in lockstep with federal jurisprudence. For instance, we recently parted company with a plurality of the United States Supreme Court[22] to hold under Wisconsin's Fifth Amendment analogue contained in Article I, Section 8, that evidence obtained as a result of an intentional *Miranda*[23] violation must be suppressed. *Knapp II*, 285 Wis. 2d 86, ¶ 2. However, *Knapp* does not stand for the proposition that we construe Article I, Section 11 more expansively than the United States Supreme Court has construed the Fourth Amendment. As explained below, we have done so in only one case. *State v. Eason*, 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625.

¶ 212. Popenhagen urges this court to exercise its authority to independently interpret the Wisconsin Constitution and to construe Article I, Section 11 in a fashion that would depart from *Miller* to hold that the

---

[22] *Patane*, 542 U.S. 630.

[23] *Miranda v. Arizona*, 384 U.S. 436 (1966).

697

Wisconsin Constitution affords a right of privacy in one's bank records. As support for her argument, Popenhagen points out that several states (California, Florida, Illinois, Washington, New Jersey, Pennsylvania, Colorado, and Utah) have rejected the holding of *Miller* and have adopted a right of privacy in bank records under their respective state constitutions. A review of these decisions, however, reveals that the cases upon which they were based differ from this case in many respects.[24]

---

[24] The California Supreme Court in *Burrows v. Superior Court,* 529 P.2d 590 (Cal. 1974), accorded persons a privacy interest in their bank records. However, *Burrows* was decided two years prior to the United States Supreme Court's deciding *United States v. Miller,* 425 U.S. 435 (1976), and it was driven in part by the Fifth Circuit's soon-to-be-overturned holding in *Miller* that people have a right of privacy in regard to their bank records. Further distinguishing *Burrows* from the circumstances here is the California Constitution, which also contains an express right of privacy that is not present in the Wisconsin Constitution. *See* Cal. Const. art. 1, § 1.

The Florida Supreme Court's decision in *Winfield v. Division of Pari-Mutuel Wagering,* 477 So. 2d 544 (Fla. 1985), is similarly distinguishable because it was based primarily on Florida's state constitutional privacy provision. Illinois has also seen fit to grant persons a right to privacy in their bank records under the state constitution, but under a search and seizure provision drafted more expansively than the Fourth Amendment. *People v. Jackson,* 452 N.E.2d 85 (Ill. App. Ct. 1983). The Washington Constitution's search and seizure provision is also drafted more broadly than the Fourth Amendment, providing for broader protection of interests not provided under the United States Constitution, including a right to privacy in bank records. *State v. Miles,* 156 P.3d 864 (Wash. 2007).

Although the New Jersey Supreme Court expressly held for the first time in 2005 that its state constitution provides an expectation of privacy in bank records, in so holding, it

¶ 213. Utah, Colorado and Pennsylvania remain the only states post-*Miller* to recognize a privacy right in bank records under state constitutional provisions nearly identical to the Fourth Amendment. *State v. Thompson*, 810 P.2d 415 (Utah 1991); *Charnes v. DiGiacomo*, 612 P.2d 1117 (Colo. 1980); *Commonwealth v. DeJohn*, 403 A.2d 1283 (Pa. 1979). Courts in these three states have adopted similar reasoning for departing from *Miller*: Customers of financial institutions expect that documents that they voluntarily transmit to those institutions will remain private; moreover, these courts reason, disclosures of one's financial affairs to these institutions are virtually unavoidable because the demands of modern society require people to maintain a bank account. *See, e.g., DeJohn,* 403 A.2d at 1289 (citing *Burrows*, 529 P.2d at 593.)

¶ 214. While we retain the authority to interpret our state constitution independently from the United States Constitution, I would decline to do so here. I observe distinctions between our Article I, Section 8 jurisprudence and our Article I, Section 11 jurisprudence, and I am unpersuaded by *Thompson, DiGiacomo*, and *DeJohn*.

¶ 215. First, our jurisprudence demonstrates that this court has construed Article I, Section 11 consistently with the Fourth Amendment. In the nearly 160 years that Article I, Section 11 has graced our state constitution, I located only one instance in which this court has interpreted that provision differently from the Supreme Court's interpretation of the Fourth Amendment. That case presented the question of

observed that New Jersey courts, like the California Supreme Court in *Burrows,* recognized a privacy interest in bank records that pre-dated *Miller. State v. McAllister,* 875 A.2d 866 (N.J. 2005).

whether, and to what extent, Wisconsin should recognize a "good faith" exception to the exclusionary rule under the state constitution. *Eason*, 245 Wis. 2d 206. Otherwise, this court has manifested an unwavering commitment to interpreting Article I, Section 11 uniformly with the Supreme Court's interpretation of the Fourth Amendment. Most pertinently with regard to the case at bar, we recently explained that "Article I, § 11 of the Wisconsin Constitution affords individuals no greater privacy expectations than those provided under the Fourth Amendment." *State v. Pallone*, 2000 WI 77, ¶ 81, 236 Wis. 2d 162, 613 N.W.2d 568.

¶ 216. Second, I would decline to adopt the reasoning of *Thompson*, *DiGiacomo*, and *DeJohn*, or the substantive interpretations these courts applied to their respective state constitutions. Those courts declined to follow *Miller* primarily because they found the reasoning of Justice Brennan's *Miller* dissent more persuasive than the reasoning offered by the *Miller* majority. *See, e.g., DeJohn*, 403 A.2d at 1290; *Miller*, 425 U.S. at 447–53 (Brennan, J., dissenting). In *Swift*, the Wisconsin Court of Appeals implicitly rejected Justice Brennan's analysis, first by observing that we had recently reaffirmed our continuing commitment to interpreting Article I, Section 11 in conformity with the Fourth Amendment, and then by concluding that the defendant had no privacy interest in his bank records under the state constitution. *Swift*, 173 Wis. 2d at 882–83. Accordingly, I conclude that bank customers have no expectation of privacy in their bank records because those records do not reside in the sole custody of the bank customer, but rather lie in the custody of the financial institution where they are expected to be viewed by others. *Miller*, 425 U.S. at 442–43.

¶ 217. In addition, when the language of the Wisconsin Constitution closely matches that of the United States Constitution, without clear expression from the framers of our state constitution indicating an intent to provide greater protections than those provided under the United States Constitution, we normally interpret the state constitution in accord with the U.S. Supreme Court's interpretation of the federal Constitution. *See, e.g., State v. Agnello*, 226 Wis. 2d 164, 180–81, 593 N.W.2d 427 (1999) (concluding that where "the language of the provision in the state constitution is 'virtually identical' to that of the federal provision or where no difference in intent is discernible, Wisconsin courts have normally construed the state constitution consistent with the United States Supreme Court's construction of the federal [C]onstitution."). Accordingly, because the language of Article I, Section 11 almost identically mirrors the language of the Fourth Amendment, and the framers of the Wisconsin Constitution declared no intention that Article I, Section 11 should be interpreted more broadly than the Fourth Amendment, I would continue our practice of interpreting Article I, Section 11 in accord with the Fourth Amendment.

¶ 218. The interests of consistency, uniformity, and predictability are well-served by continuing to interpret Article I, Section 11 in conformity with the Fourth Amendment. Such an approach "reduces to a minimum the confusion and uncertainty under which the police must operate." *State v. Fry*, 131 Wis. 2d 153, 175, 388 N.W.2d 565 (1986), *cert. denied*, 479 U.S. 989 (1986). Moreover, continuing to conform Wisconsin search and seizure law to federal search and seizure law "is not only consistent with the text of Wisconsin's search and seizure provision, its constitutional history

701

and its judicial history, but it is also in accord with sound public policy." *Id.* at 175–76. Accordingly, I conclude that Popenhagen does not have a reasonable expectation of privacy in her bank records under the Wisconsin Constitution.[25] Therefore, the Wisconsin Constitution provides no basis for suppression.

## III. CONCLUSION

¶ 219. I conclude that controlling precedent, as established more than 20 years ago by the appellate courts of this state, precludes suppressing Popenhagen's bank records and her subsequent incriminating statements. I reach this conclusion because: (1) Wis. Stat. § 968.135 does not authorize the suppression of Popenhagen's bank records as a remedy for the circuit court's failure to find probable cause that the bank records were linked to the commission of a crime; and (2) Popenhagen has no privacy right in her bank records under either the Fourth Amendment of the United States Constitution or Article I, Section 11 of the Wisconsin Constitution.

¶ 220. Accordingly, I would affirm the court of appeals decision that overturned the circuit court's

[25] My conclusion is in accord with eight of the other states that have ruled on the issue. *State v. Schultz,* 850 P.2d 818 (Kan. 1993); *Norkin v. Hoey,* 586 N.Y.S.2d 926 (N.Y. App. Div. 1992); *State v. Klattenhoff,* 801 P.2d 548 (Haw. 1990); *State v. Union State Bank,* 267 N.W.2d 777 (N.D. 1978); *State v. Fredette,* 411 A.2d 65 (Me. 1979); *State v. Melvin,* 357 S.E.2d 379 (N.C. Ct. App. 1987); *Cox v. State,* 392 N.E.2d 496 (Ind. Ct. App. 1979).

Moreover, though not determinative, it is instructive that the Wisconsin Legislature has been aware of *Miller's* holding for 31 years and *State v. Swift,* 173 Wis. 2d 870, 496 N.W.2d 713 (Ct. App. 1993) for more than 14 years; yet, it has taken no action to amend the Wisconsin Constitution.

suppression of evidence, and I respectfully dissent from the majority opinion that upholds suppression of Popenhagen's bank records and her subsequent incriminating statements.